Jane WRIGHT, Plaintiff,

v.

George W. CRIPPS, State Election Commissioner, et al., Defendants.

Wade RICHARDSON, Plaintiff,

v.

George W. CRIPPS, State Election Commissioner, et al., Defendants.

Joseph HOLLON, Plaintiff,

and

Peter C. Townsend, James P. Harrington, John F. Wilson and the New Party, an unincorporated association, Intervening Plaintiffs,

v.

George W. CRIPPS, State Election Commissioner, et al., Defendants.

Civ. A. Nos. 3616–3618.

United States District Court
D. Delaware.

Oct. 22, 1968.

Harold Shaffer, Wilmington, Del., for plaintiffs.

William E. Taylor, Jr., Wilmington, Del., for intervening plaintiffs.

Peter J. Nolan, Deputy Atty. Gen., for George W. Cripps, State Election Commissioner.

Roy S. Shiels, Dover, Del., for Levy Court Com'rs of Kent County.

William H. Vaughn, Dover, Del. for Members of Dept. of Elections for Kent County.

H. Edward Maull, Georgetown, Del., for Levy Court Com'rs of Sussex County.

A. Dean Betts, Georgetown, Del., for members of the Dept. of Elections for Sussex County.

Clarence W. Taylor and E. D. Griffenberg, Wilmington, Del., for New Castle County.

Frank O'Donnell, Wilmington, Del., for members of the Dept. of Elections for New Castle County.

Before SEITZ, Circuit Judge, and STEEL and LATCHUM, District Judges.

## OPINION

LATCHUM, District Judge.

These three cases were recently filed in the United States District Court for

Delaware.[1] The jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. Sec. 1343(3), (4), and 2284 and 42 U.S.C. Sec. 1981, 1983 & 1988.

The plaintiff in each case is alleged to be a qualified resident voter of one of the three counties of the State of Delaware.[2] The defendants are the State Election Commissioner, the Members of the Departments of Elections and the governing body of all three counties, all of whom, in one way or another, are alleged to have the responsibility of conducting the general election to be held in Delaware on Tuesday, November 5, 1968.

The essential allegations of the complaints are (1) that the Delaware election laws prohibit write-in voting so that the choice of candidates for whom votes may be cast in the forthcoming election will be limited to those persons whose names appear on the official ballots, (2) that plaintiffs will thereby be deprived of their constitutional right to vote for candidates of their choice, and (3) that unless this Court intervenes by its equitable powers, the defendants will not make provision for write-in voting for all offices to be filled at the general election. Claiming that no adequate remedy exists at law, plaintiffs prayed (1) that a three judge district court be convened pursuant to 28 U.S.C. Sec. 2284, (2) that the defendants be required to provide a reasonable method for permitting write-in voting for all offices for which an election is to be held and that any such votes cast be recorded and counted, (3) that 15 Del.C. Sec. 5008 (c) in so far as it prevents write-in voting be declared unconstitutional, and (4) that a preliminary injunction issue, thereafter to become permanent, enjoining the defendants from preparing, print-ing, or distributing ballots which fail to provide for write-in voting and from taking any other action to enforce any Delaware law which prohibits write-in voting.

This three-judge court was appointed on October 4, 1968. In view of the shortness of time between the designation of the members of this Court and the general election, the Court gave extraordinary priority to these cases, advanced them on the calendar and called a prehearing conference on October 8, 1968 to arrange procedural details for a prompt hearing on plaintiffs' application for a preliminary injunction. As a result of the agreements reached at the pre-hearing conference, orders were entered (1) consolidating the cases for hearing, (2) shortening the time for answers, (3) establishing a brief schedule and (4) fixing the date for hearing on the application for a preliminary injunction on October 17, 1968 at which time testimony would be received. Subsequently, an order was entered permitting Peter C. Townsend, James P. Harrington, John F. Wilson, Jr. and the New Party to intervene in Civil Action No. 3618 (New Castle County) as party plaintiffs but denying their motion to treat that case as a class action.[3]

The hearing on plaintiffs' application for a preliminary injunction proceeded on the basis of the pleadings filed and oral testimony received in open court on October 17, 1968.

As before noted, plaintiffs contend that, since the Delaware election laws on their face deny them "the privilege of voting for persons other than the candidates listed on the official ballot",[4] those laws deny the qualified voters of Delaware the right to freely participate

---

1. C.A. No. 3616 (Kent County case) was filed on September 27, 1968 and C.A. No. 3617 (Sussex County case) and 3618 (New Castle County case) were filed on September 30, 1968.

2. This allegation in C.A. No. 3617 (Sussex County) was contested at the hearing. For purposes of disposing of the present motions we need not resolve the issue.

3. All plaintiffs have since moved for leave to amend their complaints to bring them into compliance with Rule 23, F.R.Civ. P. (Class Action). The Court has not yet acted on this motion.

4. The parties stipulated and the Court agrees that write-in voting is not within the scheme of the Delaware election laws.

in the electoral process as guaranteed by the Constitution of the United States and violates the "equal protection" clause of the Fourteenth Amendment. Hence, relying upon the recent Supreme Court case of Williams v. Rhodes (Socialist Labor Party v. Rhodes), 393 U.S. 23, 89 S. Ct. 5, 21 L.Ed.2d 24 (Oct. 15, 1968), plaintiffs urge this Court to exercise its broad equitable powers to assure write-in voting and to enjoin the holding of the general election or certifying the results thereof if no provision is made for write-in voting.

We are thus confronted on the virtual eve of the general election which is set for November 5, 1968 by the Delaware Constitution, Del.C.Ann. (ART. 5, Sec. 1) and the laws and Constitution of the United States (U.S.Const. ART. 1, Sec. 4; ART. II, Sec. 1, Cl. 2; 2 U.S.C. Secs. 1 and 9; 3 U.S.C. Sec. 1) with the alternative of either denying the relief sought or of directing the issuance of a temporary injunction.

Plaintiffs and intervenors contend that to conduct the general election in accordance with "constitutional standards, the defendant must provide the opportunity for write-in voting." They rely on Socialist Labor Party v. Rhodes, and William v. Rhodes, 290 F.Supp. 983 (S.D.Ohio, 1968). These cases were appealed to the United States Supreme Court. On October 15, 1968 the Supreme Court affirmed the District Court in the Socialist Labor Party case and modified the judgment of the District Court in the Williams case so as to require the name of the American Independent Party to be placed on the ballot.

█ In our view a serious question exists whether the cases before the Supreme Court or the District Court of Ohio decided the important constitutional principle applicable to these cases.[5] The seriousness of this question and the uncertainty at this stage of the manner

of its resolution, is a relevant and important consideration in determining whether or not a preliminary injunction should issue. Nelson v. Miller, 373 F.2d 474 (C.A. 3, 1967), cert. den. 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980; Wing v. Arnall, 198 F.2d 571 (Em.App. 1952).

Assuming without deciding that plaintiffs' constitutional rights may be violated as contended, the questions arise whether in the present circumstances the extraordinary equity powers of this Court should be exercised to give the relief requested for the forthcoming general election and whether the relief, if given, might not do more harm than good to the public interest, might not indeed disrupt the Delaware election altogether or might not in fact create such chaotic conditions as to make a mockery of the electoral process within the State.

█ We are on the threshold of the general election; it is but two weeks away. The totality of the evidence received convinces us that it is now too late to require the State to provide a write-in method for voting at the November 5th election.

Apparently, Delaware in all its history has never provided for write-in voting either by paper ballots or voting machines. We are not satisfied that the Departments of Elections are staffed in such a manner as to be able to set up a reasonable and appropriate write-in voting procedure in the short time now available. None of the more than 1000 election district officials has had any instructions in conducting an election where write-in voting is permitted and the time remaining does not appear sufficient to provide for such instruction. Moreover, the voting public at large has been given no instruction with regard to the proposed changed procedure through the use of newspaper publicity, sample ballots and training devices for such vot-

---

5. So far as the Supreme Court decisions are concerned it is to be noted that no appeals were taken from the decision of the Ohio District Court by the defendants. Furthermore the election laws of Ohio may be significantly distinguishable from the Delaware laws. This latter circumstance may have relevance in our ultimate determination of the weight to be accorded to the Ohio decision.

ing. Furthermore, in Delaware there are no existing guidelines, regulations or laws governing such voting or for counting such votes.

Plaintiffs suggest that perhaps a write-in vote could be provided by the use of paper ballots. But this does not appear to be feasible in the very limited time remaining before the election. To provide for additional paper ballots, there must be public bidding, and the ballots must be printed and ready for delivery before November 5, 1968. Because of the number of districts involved, some 83 or more different ballots are required for offices to be voted upon in Delaware. It would require the construction of at least 392 new ballot boxes which the Departments of Elections do not now have. It would require a set of polling booths to be made for use in 392 districts. The needed supplies of pencils and sample ballots would then have to be ordered, after public bidding. Thus, we are convinced that this Court should not order a write-in vote by the use of paper ballots because it appears to be highly impracticable and possibly physically impossible within the time remaining.

Plaintiffs' alternate suggestion is that we order write-in voting by the use of voting machines. The evidence tends to show that it might be physically possible to adjust the existing voting machines in New Castle County for write-in voting by election day, although this would require a most substantial effort on the part of the Department of Elections. The testimony was, in so far as New Castle County was concerned, that the machines could be so adjusted within the next eight or nine days, and delivered thereafter in about six days to the election districts. With concentrated effort, this time could possibly be shortened. As far as we are able to determine, the same situation prevails in the other counties of the State.

Despite the physical possibility of adjusting the machines, we believe there are valid considerations which militate against ordering a write-in vote by vot-

ing machines at the November 5th election. We have already pointed out the complete lack of instructions to the election officials and the public on the use of machines for write-in voting. We believe a complete understanding of the voting procedure on the voting machines to provide for write-in voting is essential to an orderly, efficient and prompt voting procedure. The possible delay in voting on newly adjusted machines could retard voting in some of the larger districts, so as to prevent voters from casting their ballots at all.

To provide for such write-in voting by machine, 392 sets of new election district certificates, the documents used to compute and report the results from each election district, would have to be printed, which under Delaware law would require public bidding before the printing contract could be awarded. It is questionable whether this work could be completed by November 5th. To require the personnel of the Departments of Elections to enter upon a crash program to obtain the additional election certificates and to adjust and deliver the machines for use at the election would undoubtedly be performed to the detriment of their other essential duties. The registration of voters has continued through October 19th and the Departments are still in the process of readjusting the registration lists so as to comply with the reapportionment law passed at the last session of the General Assembly. That work in New Castle County is not yet completed. To draw personnel from this work could result in disenfranchising others if the registration procedure were slowed up and the registration books were not put in order.

Moreover, there is the question of absentee voters. Absentee ballots along with instructions have been prepared, approved by the Attorney General, printed after public bidding procedures, and were delivered to the several Departments of Elections by October 5, 1968. Approximately 2800 absentee ballots have been mailed to members of the armed forces, the hospitalized and those

who will be absent from the State on business. More than 300 of these ballots have been voted and returned. More than 1900 requests for such ballots are now being filled. None of these provided for write-in procedures and time does not exist to re-print, re-mail and vote such ballots. While plaintiffs and intervenors disclaim any interest in providing write-in voting for absentee voters, yet to ignore them and provide for the relief requested would create, unjustifiably in our opinion, two classes of voters with unequal rights for the forthcoming election thereby raising other constitutional difficulties.

The matter of write-in votes for president and vice president also presents a special problem. The president and vice president are elected by electors in the manner the Legislature directs; they are not elected by direct vote of the voters. Article II, Sec. 1, clause 2, and Twelfth Amendment of the Constitution of the United States.

Under Delaware law the name of the electors are not on the ballot. The names of the candidates for president and vice president are listed, however, under the names of the respective parties printed on the ballot. 15 Del.C. Sec. 4502(c). The voters vote for the candidates themselves and these votes are treated as votes for the electors whose names have been certified to the Secretary of State on or before September 1st of the election year by the Conventions or Committees of the political parties duly recognized by state law. 15 Del.C. Secs. 4951, 5704, 3301 and 3303.

Since write-in candidates are outside of the contemplation of the Delaware law no provision has been made in the law for the designation of electors for write-in candidates for president or vice president. Justice Douglas, in Socialist Labor Party v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (decided Oct. 15, 1968), stated that to provide the opportunity to write in candidates in a presidential election would be ineffective if the state prevented the candidates from presenting a slate of electors for certification. The District Court in Ohio attempted to solve the problem by permitting write-in votes for presidential and vice presidential candidates to be counted:

"provided that votes cast for candidates for these offices who have not provided the Secretary of State of the State of Ohio with a list of the required number of electors prior to October 15, 1968, need not be counted, recorded or considered."

Even if we are determined to follow the general type of electoral designation permitted under the Ohio decision no list of electors could possibly be supplied to the Secretary of State of Delaware before October 23rd, at the very earliest, by persons desiring to vote for write-in candidates. The Ohio Court, by fixing an electoral filing deadline of October 15th, implicitly indicated that a filing date at any time thereafter would be too late to be practical. We subscribe to this view because the confusion which would be generated by such last minute filings pose a real risk of interference with an orderly election and the rights of other voters.

It is to be noted that the District Court of Ohio gave voters twenty-three days after its opinion was filed within which to supply the Secretary of State of Ohio with the names of electors they chose for their write-in candidates. No comparable relief could be granted in the instant case without extending the time for filing electors beyond the November 5th election date. If write-in candidates should win the presidential election, this Court might possibly, as plaintiffs and intervenors suggest, thereafter appoint persons who would act as electors and cast ballots for the successful candidates. This would require additional instructions and would add to the confusion of voters and election officials and cause delays at the polls previously alluded to. Furthermore if this procedure were to be followed after the election, it would fly in the face of 3 U.S.C. Sec. 1 which requires electors to be appointed on November 5th.

We believe the plaintiffs waited too late to assert their alleged rights to be effective at the November 5th election. These actions were not commenced until September 27 and 30, 1968 and even with priority handling the hearing on the preliminary injunction could not be heard until October 17, 1968. The Delaware law which makes no provision for write-in voting has existed for years. It was not a new development recently arising. Plaintiffs could have asserted their rights in sufficient time for this Court to have given effective relief without the consequent disruption to the elective process which will result because of their delay.

The granting of injunctive relief as requested here is a matter of sound judicial discretion, National Chemsearch Corp. v. Bogatin, 349 F.2d 363 (C.A. 3, 1965), and the Court is required to balance the convenience of the parties against that of the public interest. A. F. of L. v. Watson, 327 U.S. 582, 593, 66 S.Ct. 761, 90 L.Ed. 873 (1945); Commonwealth of Pennsylvania v. Williams, 294 U.S. 176, 185, 55 S.Ct. 380, 79 L.Ed. 841 (1934).

The sum of all the considerations before us forces us to conclude that the extraordinary relief sought could be had at this late stage of the electoral process only at the gravest risk of disrupting the process completely and possibly disenfranchising Delaware voters in perhaps greater numbers than those whose interests plaintiffs represent. In this situation, where equitable relief would so adversely affect the public interest, it should be withheld. MacDougall v. Green, 335 U.S. 281, 286, 69 S.Ct. 1, 93 L.Ed. 3 (1948—Rutledge, J.); Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1943); Socialist Labor Party v. Rhodes, supra.

Findings of fact and conclusions of law are set forth in this opinion in accordance with Rule 52(a), F.R.Civ.P.

An order will be entered denying plaintiffs' and intervenors' motions for a preliminary injunction.

SEITZ, J., concurs in this opinion except for the views expressed therein with respect to the impracticability of providing for presidential electors.