Joseph F. McINERNEY, Plaintiff,

v.

Lewis C. WRIGHTSON, State Election Commissioner, et al., Defendants.

Civ. A. No. 76–287.

United States District Court,
D. Delaware.

Sept. 14, 1976.

Irving Morris, and Joseph A. Rosenthal, of Morris & Rosenthal, Wilmington, Del., for plaintiff.

A. Gary Wilson, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

■ This case is before the Court on a motion by the plaintiff for a mandatory preliminary injunction to have his name placed on the November general election ballot. It should be noted at the outset that the constitutionality of the Delaware election statute is not at issue in this case. The defendants concede that the statute is unconstitutional.[1]

Joseph F. McInerney is presently an independent candidate for the office of United States Senator from the State of Delaware. The plaintiff has been and remains a registered democrat.[2] In late 1975, he announced his intention to seek the Democratic nomination for United States Senator. On May 8, 1976, the plaintiff abandoned that ambition and announced as an independent candidate for the same office. Subsequently, the plaintiff formed the Delaware Party for the purpose of obtaining a place on the November general election ballots for his candidacy as a United States Senator.

---

1. Specifically, the defendants have stated that the Delaware election laws are inconsistent with recent Supreme Court decisions. This may not be an express concession of unconstitutionality, but the defendants have not briefed or argued this issue, other than a passing reference. (Defendants' Brief at 6.) Therefore, the distinction between an express concession and the defendants' statements is a distinction without a difference and the constitutionality issue is taken as conceded by the defendants.

2. Delaware prohibits changing party registration until after the final primary election; this year, September 11th. 15 Del.C.A. §§ 1749; 3101(b) (1975).

On June 7, 1976, a new law went into effect in Delaware which requires, *inter alia,* a party to file by August 15th petitions certifying the existence of the party and signed by at least one percent of the registered voters of Delaware (2,609 valid signatures are necessary to qualify for the November, 1976 ballot).[3] The plaintiff circulated petitions and submitted 3,746 signatures to the Department of Elections to certify the existence of the Delaware Party. On September 2nd, the various County Boards of Elections completed their processing of the petitions and validated only 2,425 of the 3,746 signatures submitted.[4] The Delaware Party, thus, failed to qualify under the new statute.

Prior to the decision by the County Election Boards, the plaintiff filed suit in this Court seeking a declaratory judgment that the Delaware election laws are unconstitutional insofar as they fail to provide for a candidate without party affiliation to appear on the general election ballot.[5] The complaint further seeks preliminary and permanent mandatory injunctions directing the defendants, the Delaware Election Commission and members of the County Election Boards, to place the plaintiff's name on the November ballot. This decision constitutes the findings of fact and conclusions of law required by F.R.Civ.P. 52(a).

On a motion for a preliminary injunction the moving party must shows: 1) that he is likely to prevail on the merits; 2) that he will be irreparably injured without the requested relief; 3) that the preliminary injunction will not harm substantially other parties interested in the proceeding; 4) that the public interest will be served by the issuance of the injunction.[6] *A. O. Smith Corp. v. FTC,* 530 F.2d 515, 525 (3d Cir. 1976).

*Immediate Irreparable Injury*

Basic to any request for a preliminary injunction is a showing of immediate irreparable injury to the movant. *National Land & Investment Co. v. Specter,* 428 F.2d 91, 97 (3d Cir. 1970). The defendants have attested that September 14, 1976, is the last day names can be added to the general election ballot without a serious disruption of the election process.[7] Attempts to add names after that date would create chaos and threaten the disenfranchisement of absentee voters, who must receive their ballots well in advance of November 2 in order to return them on time.[8] Thus, the immediate threat to the plaintiff is that his name will not appear on the general election ballot.[9] There is no adequate remedy at law to compensate the plaintiff for this injury should he prevail in the final judgment.

3. 60 Del.L.Ch. 446 § 1(c). The statute establishes other avenues for a party to place candidates on the ballot, based on the number of votes received by that party in the previous general election.

4. As to the strict requirements for validation applied by the Boards, see note 21 *infra.*

5. Although there may have been a question as to the plaintiff's standing to bring this suit at a time when he was a candidate of a political party (the Delaware Party), the defendants did not challenge his standing on that ground. Further, the parties agree that the Delaware Party was a sham and the plaintiff has abandoned any attempt to qualify as a party candidate and therefore he has standing to bring this suit.

6. The defendants argue that the equitable relief should be denied because the plaintiff is guilty of laches for not having filed his action sooner. They rely on *Williams v. Rhodes,* 393 U.S. 23,

89 S.Ct. 5, 21 L.Ed.2d 24 (1968). But in *Williams,* the Court accepted the laches argument as to one plaintiff because his request to be placed on the ballot would have required the printing of a new ballot. The Court ordered the other plaintiff to be placed on the ballot because his request had been filed prior to the printing of the ballot. The printing date in this case has not yet passed and therefore the defendants' citation is inapposite.

7. Defendants' Exhibit 3, Affidavit of Betty M. Pond, Administrative Director of the Department of Elections for New Castle County.

8. *Id.;* see 15 Del.C.A. § 5503 (1975).

9. Delaware does provide write-in space on the ballot. 15 Del.C.A. § 4502 (1975). *But see Lubin v. Panish,* 415 U.S. 709 at n. 5, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974).

Therefore, the Court concludes that the plaintiff has made the necessary showing of irreparable harm.

*The Possibility of Harm to Other Interested Parties*

 The defendants have described to the Court the possible harm to their interests which may occur if the injunctive relief is granted. The defendants have noted that the voting machines, required by Delaware law to be used,[10] can accommodate only nine candidates and that at present seven columns have been filled. The defendants have indicated to the Court that they expect at least three other parties to seek a ballot position.[11] If more than nine candidates qualify for ballot positions, the State will be forced to use paper ballots instead of machines. The Court is very mindful of this potential problem and does not minimize the inconvenience, inefficiency, delay and other inherent disadvantages that use of paper ballots may cause. But, the State has not argued that placing the plaintiff on the ballot inevitably will require changing to paper ballots. Further, a constitutional claim is at stake in this action and if the plaintiff demonstrates a reasonable probability of prevailing on the merits, the Court cannot defer that claim in the interest of administrative efficiency.[12] After weighing the harm which might accrue, it is concluded that the issuance of the injunction should not be deferred by reason of substantial harm to other interested parties.

*The Public Interest*

██ The parties have cited two apparently competing public interests involved in this case. The plaintiff asserts the constitutional right of the public to an effective vote and the right of a qualified independent candidate to appear on the ballot. *See Williams v. Rhodes,* 393 U.S. 23, 31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *cf. Wesberry v. Sanders,* 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964). But the defendants argue that the public also has the right to receive a ballot which is not confusing. *See Lubin v. Panish, supra,* 415 U.S. at 715, 94 S.Ct. 1315. We agree with the defendants' contention, but conclude that there has been no showing that the addition of the plaintiff will cause confusion among Delaware voters. Nor has there been a showing that, should paper ballots be used, those ballots are more confusing to the voter than machine ballots. Therefore, it is concluded that if the plaintiff meets the other requirements for the issuance of interlocutory relief, the public interest would be served by ordering his placement on the ballot.

*The Likelihood of Success*

Turning to the likelihood of the plaintiff prevailing on the merits, the issue is: where a state's election statutes are concededly unconstitutional by failing to provide for an independent candidate, without a party organization, to appear on a general election ballot, under what circumstances may an independent candidate obtain a place on the ballot?

Armed with the concession that the Delaware election statutes are unconstitutional because there is no provision for an independent candidate qualifying, unless he has a political party supporting him,[13] the plaintiff argues that if he demonstrates that he is a serious, truly independent candidate

10. 15 Del.C.A. § 5003 (1975).

11. Defendants' Exhibit 3, Affidavit of Betty Pond, Administrative Director of the Department of Elections for New Castle County. On September 10th, Eugene McCarthy and supporters of his candidacy for President of the United States filed suit in this Court seeking a place on the November ballot.

12. The claim of electoral disruption discussed by the Supreme Court in *Williams v. Rhodes,* 393 U.S. 23, 34–5, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), differs substantially from that argued by the defendants here. In *Williams,* an order to place the Socialist Labor Party on the ballot would have required a new ballot to be printed and posed a risk of disenfranchising absentee voters. This Court has already considered the problem of printing ballots. See note 6 *supra.*

13. *Storer v. Brown,* 415 U.S. 724, 745, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974).

with a satisfactory level of community support, his name should be placed on the general election ballot. *Storer v. Brown, supra* 415 U.S. at 746, 94 S.Ct. 1274. The defendants agree with this formulation of the issue, but contest the plaintiff's assertion that he meets the tests. The opinions in *Storer v. Brown, supra*, and *Williams v. Rhodes, supra*, may be susceptible to a different interpretation of the right at stake and the remedy available where, as here, the State has failed to establish the qualifications necessary for an independent candidate to appear on the ballot.[14] Because the parties have framed the issues to their satisfaction, however, and because of the disposition made of this motion, it is unnecessary to consider the validity of other possible theories.

■ The litigants agree that the plaintiff is a serious candidate for the office of United States Senator from Delaware.[15] Thus, the issue focuses on the plaintiff's independence and his support in the community.

The plaintiff argues that there can be no doubt as to his independence. He refers the Court to his publicized break from the Democratic Party in May of this year, to campaign material which emphasizes his independence from traditional political parties, and to his own affidavit in which he attests to his independence.

The defendants stress the importance the State attaches to the maintenance of an effective electoral process and the need to prevent specious candidates from appearing on the ballot. They point to the lateness of the plaintiff's conversion from a registered Democrat and candidate for the Democratic nomination to an independent candidate. Further, the defendants rely heavily on *Storer v. Brown, supra*, in further contending that the Court should impose a disaffiliation requirement, perhaps as much as one year, before a candidate may qualify as an independent.

■ The Court is acutely sensitive to the defendants' concern for the integrity of the election process. That sensitivity, however, is tempered by the awareness that this is a federal court and not the Delaware General Assembly. Clearly, the legislature could have enacted a party disaffiliation requirement which, under the facts of this case, would have prevented the plaintiff from qualifying as an independent. *See Storer v. Brown, supra.* But the General Assembly has not done so and the defendants cannot now successfully seek to impose

---

**14.** The language in *Storer* refers to the authority of the State, under Article II Sec. 1 of the Constitution, to assure itself that a purported independent candidate is serious, independent and has a degree of community support. That case, however, and others like it which reached the Supreme Court concerned a State's exercise of that authority and the issue was whether the statutory burdens imposed to establish seriousness, independence, and community support were constitutional. In the instant case, by contrast, the State has enacted no such regulations. Arguably, the language in *Storer* can be construed that the right to appear on the ballot is possessed by every citizen, subject to the State's right to limit access to those it defines as serious, independent, and having community support. *Cf. Lubin v. Panish, supra*, 415 U.S. at 719, 94 S.Ct. at 1321: "The point, of course, is that ballot access must be genuinely open to all, subject to reasonable requirements." Under this theory, taken to its logical conclusion, where the state does not impose reasonable requirements, it cannot bar any candidate. Alternatively, one may view the right to ballot access as derivative of the right to vote. *See Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). The failure to provide any opportunity for an independent to appear on the ballot is a substantial burden on the right to vote. As noted above, however, the parties to this litigation have defined the right to ballot access as possessed only by the serious, independent, community-supported candidate, subject to the State's authority to set the standards to determine those qualities. The issue, thus, is how to evaluate an independent candidate's application for a ballot position where the State has not spoken.

**15.** The defendants raised a question as to the meaning of the Supreme Court's phrase in *Storer, supra*, 415 U.S. at 746, 94 S.Ct. 1274, "serious contender," but offered no possible construction. The Court believes that the phrase refers to the subjective interest of the candidate, as reflected by objective manifestations and not to the likelihood of the candidate prevailing in the election. *Cf. Williams v. Rhodes, supra*, 393 U.S. at 32, 89 S.Ct. 5.

judicially a requirement that the legislature has declined to impose. This Court will not presume to encroach upon the legislative discretion delegated by Article I Sec. 4 to regulate the election of United States Senators.[16]

The defendants' reliance on *Storer* is misplaced. In *Storer* California had passed a statute requiring an independent candidate to disassociate himself from any qualified political party at least one year prior to the primary immediately preceding the general election. Contrary to the defendants' contention,[17] there is no language in the opinion that indicates that the Constitution mandates a one year disaffiliation requirement. Simply put, California enacted such a requirement in the exercise of its discretion and Delaware has not. Moreover, the fact that the General Assembly did not place in its new law a disaffiliation requirement for minority parties to qualify further undercuts the defendants' argument.

█ The Court thus must determine on the basis of the record before it whether the plaintiff is independent from the Democratic Party. The affidavit of the plaintiff and the criticisms of traditional party politics contained in the plaintiff's campaign brochure are strong indications of the plaintiff's disassociation from his former political ties. At bottom, what is sought to be determined from these external indicators is the plaintiff's good faith intent and beliefs. The Court recognizes that the plaintiff remains a registered Democrat; however, as noted above, Delaware law prevents a person from altering his party designation between March 1st and the date of the primary.[18] Further, the defendants have not contradicted the showing by the plaintiff that by his acts and public declarations he has broken with the Democratic Party. There has been no showing of any continuing loyalty to nor any connection with that Party, other that his registration. On the basis of these facts, the Court concludes that the plaintiff has sustained his burden of showing a reasonable probability that he will be able to establish at trial his status as an independent.

The third criterion discussed by the parties as necessary to qualify for a position on the ballot is community support. Both sides concur that the plaintiff has some community support; the issue centers around the minimum strength necessary. Supreme Court opinions provide little guidance, for, again, each of those cases involved a challenge to a legislative determination of the degree of community support required to qualify as an independent candidate. *See, Williams v. Rhodes, supra.* The Supreme Court has never had the occasion to speak of a constitutional minimum. The defendants ask the Court to require, by analogy to the party qualification statute [19] the signatures of one percent of the registered voters in Delaware,[20] validated by the County Board of Elections. The plaintiff seems to accept the one percent requirement, but at oral argument expressed dissatisfaction with the validation process.[21]

█ The Court does not believe that the Constitution requires a candidate to obtain the signatures of one percent of the regis-

---

**16.** "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each state by the Legislature thereof. . . . "

**17.** Defendants' Brief at 12.

**18.** 15 Del.C.A. § 1749 (1975).

**19.** 60 Del.L.Ch. 446 § 1(c).

**20.** The State Election Commissioner has determined that, for purposes of the 1976 elections, the one percent figure equals 2,609 signatures. Defendants' Exhibit 1.

**21.** The August 17 news release of the State Election Commissioner states that the names and addresses on the petition must be the same as the names and addresses on the voter registration rolls. "Any deviation from this might eliminate the name from the petition by preventing the verifying of the signature." Defendants' Exhibit 2. Presumably this means that if a registered voter has changed her name by marriage or has moved since the date of registration, but has not yet changed the address with the Department of Elections, his or her signature on a petition may be invalidated.

tered voters in a state. Indeed, I see no constitutional infirmity in a state statute that does not require a candidate to produce any petition signatures in support of a request for a ballot position. In the absence of the pressure created by the defendants' ballot printing schedule, the Court might accede to the defendants' request to require the validated signatures of one percent of the registered voters. But, under the circumstances of this case, there is insufficient time available for the plaintiff to canvass the voters and to have the signatures validated by the Boards of Election prior to the date for sending the ballot to the printer.

■ As noted above, the plaintiff, in an attempt to qualify under the minority party provisions of Delaware law, has already submitted petitions with the signatures of over 3,500 persons; the Boards of Election validated 2,425 of those signatures. The plaintiff has argued and the defendants have not disputed that all of the publicity surrounding the creation of the Delaware Party, the purpose of the plaintiff in creating it, and the basic message communicated in the solicitation of petition signatures was that the Delaware Party was solely a vehicle to place the plaintiff's name on the ballot.[22] Moreover, since the institution of these proceedings, the plaintiff has circulated petitions in his own name and, to date, has collected 4,152 signatures, of which 1,472 have been validated.[23] In light of all these facts and the peculiar circumstances surrounding this case, it is concluded that the plaintiff has demonstrated a sufficient degree of community support to sustain his burden. This decision does not require any further incursion into this murky area of constitutional law.

In closing, a few general comments are appropriate. The issues in this case involve, at bottom, the most dearly held right in our political system:

No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.[24]

■ Because of the reservations expressed above[25] and because the Federal Constitution expressly delegates to the states the responsibility to regulate the election of United States Senators, a federal court should be very reluctant to engage in the delineation of requirements for an independent candidate to appear on a general election ballot. I am confronted in this case, however, with the clear failure of the Delaware General Assembly to provide what the Constitution through the First and Fourteenth Amendments commands it to provide: an effective method for an independent candidate without party organization to obtain a place on the general election ballot.[26] It is hoped that the Delaware legislature will act promptly to eliminate this inadequacy in its election laws.

22. In fact, the defendants at argument adopted the plaintiff's contentions that the Delaware Party was a sham and cited it as an additional reason to deny the plaintiff's petition as a candidate of the Delaware Party. *But cf. King v. Willis*, 333 F.Supp. 670 (D.Del.1971).

23. Of the 4,152 collected 1,786 have either not yet been submitted or have not yet been reviewed by the Boards of Election.

24. *Wesberry v. Sanders, supra*, 376 U.S. at 17, 84 S.Ct. at 535.

25. See text accompanying note 16 *supra*.

26. The defect is all the more glaring in this case, since rarely does the State's Attorney General find himself in so hopeless a posture that he must concede without argument as he has in this case that a State statute is unconstitutional.