Eugene J. McCARTHY et al., Plaintiffs,

v.

The Honorable Sherman TRIBBITT,
Governor of the State of Delaware,
et al., Defendants.

Civ. A. No. 76–300.

United States District Court,
D. Delaware.

Sept. 16, 1976.

Paul P. Welsh, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiffs.

A. Gary Wilson, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

The plaintiffs in this case have filed suit seeking a judgment declaring the Delaware election law unconstitutional and a mandatory injunction ordering the names of former Senator Eugene J. McCarthy and John H. Stouffer placed on the November, 1976, general election ballot. The defendants have waived their right to trial and have

submitted the case for final judgment based on the record, briefs, and oral argument.[1] Both parties consented to an expedited briefing and argument schedule because of the necessity of sending the ballots to the printer no later than September 17th.[2]

Plaintiffs McCarthy and Stouffer are candidates for President and Vice-President of the United States, respectively, without any party affiliation. Plaintiffs Bradford L. Glazier, Joel F. Glazier, and George H. Boyer seek to have their names placed on the ballot as Presidential Electors for the purpose of voting for Senator McCarthy in the Electoral College. All five of these plaintiffs meet the technical qualifications of age and citizenship for the positions they seek. Plaintiffs Charles F. Callaman, Sheryl Rush-Milstead, and Stowell Kessler are qualified voters in the State of Delaware.

For several months plaintiffs McCarthy and Stouffer have been campaigning for the office of President and Vice-President of the United States. Senator McCarthy has declared by affidavit not disputed by the defendants that he is an independent candidate, is not registered as a member of any party, and that he has succeeded in having his name placed on the ballot in 20 states, including Pennsylvania and New Jersey.

■ Issuance of a mandatory injunction requires the movant to show the likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law. *See O'Shea v. Littleton*, 414 U.S. 488, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). The defendants have stated that September 17th is the last day changes can be made on the November ballot without serious disruption of the election process. The addition of names after the ballot has been sent to the printer would create chaos and threaten the disenfranchisement of absentee voters, who must receive their ballots long before the official election day (November 2nd) in order to return them on time.[3] Thus, the immediate danger to the plaintiffs is that their names will not appear on the general election ballot.[4]

■ If the Court finds that the plaintiffs have wrongfully been denied a place on the ballot, the obvious and only effective remedy is to order their placement. There is no adequate remedy at law to compensate the injury resulting from such a denial.

The instant case raises certain issues similar to those in *McInerney v. Wrightson*, 421 F.Supp. 726 (D.Del.1976), decided by this Court September 14th. The factual background of the two cases, however, is sufficiently different so as to raise distinct constitutional issues. In *McInerney*, the defendants' having conceded deficiencies in the State's general election laws, this Court in the procedural context of issuing a preliminary injunction held the Delaware statute unconstitutional insofar as it fails to provide any access to the ballot by an independent candidate. No additional reasons have been offered to cause the Court to reevaluate its preliminary determination.[5]

1. Defendants' brief at 2.

2. In *McInerney v. Wrightson*, D.C., 421 F.Supp. 726. Decided by this Court on September 14, 1976, the State represented that the ballot was to be sent to the printer on September 14th. In the instant matter, the defendants have represented that there would be a minimal disruption of the election process if the ballots were sent no later than September 17th. See discussion *infra* at 1195.

3. 15 Del.C. § 5503 (1975).

4. Delaware does provide write-in space on the ballot. 15 Del.C. § 4502 (1975). *But see Lubin v. Panish*, 415 U.S. 709, 719 n.5, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974).

5. To the extent that the defendants impliedly contend that the requirement of party affiliation to run for office is a reasonable restriction on candidate's access to the ballot (Defendants' Brief at 9), this contention flies in the face of *Storer v. Brown*, 415 U.S. 724 at 745–46, 94 S.Ct. 1274 at 1286, 39 L.Ed.2d 714 (1974):

"But more fundamentally, the candidate, who is by definition an independent and desires to remain one, must now consider himself a party man, surrendering his independent status. Must he necessarily choose the political party route if he wants to appear on the ballot in the general election? We think not."

**1196**

Accordingly, that holding is reaffirmed here. The issue then becomes whether in view of the unconstitutional election statute, the plaintiffs are entitled to have their names on the ballot.

Senator McCarthy and Mr. Stouffer contend that they are serious, independent candidates with sufficient community support to warrant their placement on the ballot. These three standards derive from *Storer v. Brown*, 415 U.S. 724 at 746, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). The defendants have adopted these criteria, but argue that the plaintiffs do not meet these standards on the basis of the record before the Court.

The Court finds little to dispute the seriousness and independence of the plaintiffs in this case. Indeed, the defendants have scarcely argued the issue of seriousness.[6] On the basis of the McCarthy affidavit and its assertions as to personal motivation and the national scope of the campaign, there is no doubt that the plaintiffs are serious candidates.

The defendants dispute the independence of these candidates, alleging that the record is inadequate to establish this criterion. The record does reflect that Senator McCarthy is currently registered as an independent in Minnesota and that his campaign has been in operation since at least early in 1976. Since the defendants have not offered any evidence to rebut the plaintiffs' showing, it is concluded that the plaintiffs have demonstrated sufficient independence.

The issue of community support presents a more serious obstacle for the plaintiffs. To establish the necessary community support they have cited to the Court national public opinion polls, the results of petition drives in other states and the fact that two supporters of the plaintiffs collected over 300 unvalidated petition signatures in the space of several hours of solicitation.

■ The Court is very reluctant to rely on the findings of a national public opinion poll to indicate support in the State of Delaware. First, the context in which the phrase "community support" appears in the *Storer* opinion indicates that it was a reference to the community of the state. Therefore, evidence of national appeal is only indirectly relevant to a determination of the candidate's support in Delaware. Further, the Court is unconvinced that a second-hand interpretation of the poll is adequate evidence of community support. There is no indication from the record as to how the poll was conducted, how many persons were interviewed and what precise questions were asked. *But see McCarthy v. Askew*, 420 F.Supp. 775 (S.D.Fla.1976).

Similarly, evidence of petition drives in other states does not demonstrate community support in Delaware. Indeed this evidence merely begs the question of why similar efforts were not made in Delaware, if, as the plaintiffs contend, a showing of seriousness, independence and community support is all that is required to appear on the ballot. To accept the plaintiffs' argument is to treat a candidate's support in one state as a sufficient showing of community support in every state. The Court declines to define community support so broadly.

■ Finally, the plaintiffs refer to the number of unvalidated signatures gathered in a brief time in Delaware as an indication of community support. At most, this figure represents less than .002 of the registered voters in Delaware. An indication of support it may be, but an adequate showing it is not. It is concluded the plaintiffs have demonstrated their seriousness and independence, but in failing to show more than a smattering of support in Delaware have not met their self-imposed burden of demonstrated community support.

If this ended the Court's inquiry, then Senator McCarthy would not be entitled to a place on the Delaware ballot. However, as suggested in a footnote in *McInerney*,[7] the inquiry should not end at this point. The parties in *McInerney*, as in the case at bar, had read the election law cases to require a candidate to meet the *Storer* qual-

---

6. Defendants' Brief at 10.

7. *McInerney v. Wrightson, supra*, 421 F.Supp. at 731.

ifications before being entitled to a place on the ballot, assuming the Delaware party affiliation requirement was found unconstitutional. Unlike *McInerney,* the plaintiffs McCarthy and Stouffer have not satisfied all of the *Storer* tests. Therefore we now need to address the remaining issue: whether to deny plaintiff candidates a place on the November ballot would impermissibly infringe their rights as independent candidates or the rights of the plaintiffs who are registered Delaware voters.

■ Both the text of the Constitution[8] and recent Supreme Court decisions[9] firmly establish that the State has the authority to regulate access of candidates to the ballot. But that authority must be exercised so as not to burden unfairly or unnecessarily an individual candidate's equally important interest in the availability of political opportunity. *Lubin v. Panish, supra,* 415 U.S. at 716, 94 S.Ct. 1315. Moreover, not only is the candidate's right at stake, but also the right of the voter to cast an effective vote.[10] These two rights are so closely related that an infringement on one almost inevitably affects the other. *See Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Cf. Buckley v. Valeo,* 424 U.S. 1, 22, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). For purposes of examining the issue in this case, however, it is perhaps useful to treat the rights as analytically distinct.

■ As noted above, the parties have defined the right of a candidate to be placed on a ballot as possessed only by those who are serious, independent, and community-supported candidates. Indeed, the defendants argue that these qualities are jurisdictional prerequisites, in that a plaintiff without any one of them lacks standing to attack the constitutionality of the election laws. The Court does not subscribe to this limited view of a candidate's right of access to the ballot.

The language of the Supreme Court's opinion in *Storer v. Brown, supra,* 415 U.S. at 746, 94 S.Ct. 1274 does not refer to a constitutional requirement that a candidate be serious, independent and community-supported. It rather reaffirms that a state is "free" to establish those as qualifications for a candidate to appear on a ballot. Simply stated, every independent candidate has the right to have his name placed on a ballot, subject to the state's authority to restrict access to those who are independent, serious and have community support. The language in *Lubin v. Panish, supra,* 415 U.S. at 719, 94 S.Ct. at 1321 is quite explicit: *"The point, of course, is that ballot access must be genuinely open to all, subject to reasonable requirements."* (Emphasis supplied.) The Delaware General Assembly has not enacted "reasonable restrictions" on the access of independent candidates to the ballot. It has completely barred them from appearing on the ballot.

■ This Court is sympathetic to the defendants' desire to assure smooth elections.[11] The Supreme Court opinions in this

---

**8.** Art. I, Sec. 4, Cl. 1:

"The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof, . . . ."

Art. II, Sec. 1, Cl. 2:

"Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress . . . ."

**9.** *See, e. g., Storer v. Brown, supra; Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

**10.** "The right of a party or an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters." *Lubin v. Panish, supra,* 415 U.S. at 716, 94 S.Ct. at 1320. *See also Williams v. Rhodes, supra,* 393 U.S. at 31, 89 S.Ct. 5.

**11.** The defendants have stated that the voting machines, required by Delaware law to be used (15 Del.C. § 5003 (1975)), can accommodate only nine candidates and that at present eight columns have been filled. The defendants have also noted that a political party is presently seeking a place on the ballot by an action in the State court. If more than nine candidates qualify for ballot positions, the State may be forced to use paper ballots. The Court is very conscious of this potential problem and the inher-

area have repeatedly emphasized the compelling nature of a state's interest: "the State understandably and properly seeks to prevent the clogging of its election machinery, avoid voter confusion . . . . Moreover, a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." *Bullock v. Carter, supra*, 405 U.S. at 145, 92 S.Ct. at 857. But Delaware has gone far beyond this mandate and, in effect, required all candidates to affiliate with a political party. *Storer v. Brown*, holds that such a requirement is unconstitutional. 415 U.S. at 745–46, 94 S.Ct. 1274. Since the Federal Constitution establishes no qualifications for presidential candidates, other than age, citizenship, and residence, and since the Delaware restrictions are unconstitutional as applied to independent candidates, the plaintiff candidates have a right to be placed on the ballot.

Alternatively, the constitutional right of voters to an effective franchise creates an additional basis for granting the relief requested by the plaintiffs (other than McCarthy and Stouffer) who are registered voters in Delaware. The Supreme Court has held that constitutional right to be a fundamental interest. *Williams v. Rhodes, supra*, 393 U.S. at 30–31, 89 S.Ct. 5. Further, the Supreme Court has noted that the candidacy of an independent reflects a substantively different approach to political activity than a party candidacy; neither can be a substitute for the other. *Storer v. Brown, supra*, 415 U.S. at 745, 94 S.Ct. 1274. A critical theme in an independent candidate's appeal to the voters may be precisely his rejection of party ties and his commitment to his own, idiosyncratic perceptions of problems and solutions. The candidacy of an independent also permits voters to use the franchise to register their own criticism of party politics. The importance of an effective franchise to the democratic process compels this Court in the absence of reasonable regulation by the State, to place the plaintiffs on the November ballot.

As noted above, the State can enact provisions to limit the access of independent candidates to the ballot which will easily survive constitutional attack. *See Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). But, as this Court stated in *McInerney:*

"  . . . this is a federal court and not the Delaware General Assembly . . . the defendants cannot now successfully seek to impose judicially a requirement that the legislature has declined to impose. This Court will not presume to encroach upon the legislative discretion delegated by Article I Sec. 4  . . . ." 421 F.Supp. at 731.

In summary, on the basis of either theory discussed above, plaintiffs McCarthy and Stouffer have a constitutional right to be placed on the ballot. Delaware has placed unreasonable restrictions both on an independent candidate's right to ballot access and on the Delaware voters' right to an effective franchise. The discussion of the candidates' rights implicitly has disposed of the defendants' standing argument; it is not necessary for a candidate to demonstrate seriousness, independence, and community support in order to challenge the constitutionality of a state election statute. All that must be shown is that the plaintiff is indeed a candidate and an independent.

The defendants finally argue that injunctive relief should be denied on the grounds that the plaintiffs are guilty of laches. As authority for this position defendants cite *Williams v. Rhodes, supra*, 393 U.S. at 34–35, 89 S.Ct. 5. The Court believes this case to be inapposite. In *Williams*, the Court affirmed Justice Stewart's decision, sitting as a Circuit Justice, to refuse to order the name of one party to that action placed on the ballot because it would have required reprinting the entire ballot and threatened the disenfranchisement of absentee voters. The ballots have not yet been printed in Delaware and there-

---

ent delay and inefficiency that use of paper ballots may cause. But at this point the use of paper ballots is not inevitable. Further, a meri-

torious constitutional claim is at stake in this action and administrative efficiency cannot bar vindication of that claim.

fore the situation in *Williams* is not before this Court. Moreover, it is important to note that the Court in *Williams* affirmed Justice Stewart's order to have the name of another party placed on the ballot where the petition for the relief preceded the printing of the ballot. *Id.*

The opinion in *McInerney* expressed the reservations and concerns the Court has about imposing judicial restriction on access to the ballot. I simply reaffirm that relief is being granted in these cases because of the failure of the Delaware General Assembly to provide independent candidates reasonable access to the ballot.