**Lester G. MADDOX et al., Plaintiffs,**

v.

**Lewis C. WRIGHTSON, Election Commissioner of the State of Delaware, Defendant.**

Civ. A. No. 76–320.

United States District Court, D. Delaware.

Oct. 7, 1976.

# 1250

Patrick Scanlon, Dover, Del., for plaintiffs.

A. Gary Wilson, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

Plaintiffs Lester G. Maddox and William D. Dyke aspire to become President and Vice-President of the United States respectively. Plaintiffs Alice M. DeLude, Lucella Jones and Arthur McKinney seek to become presidential electors from the State of Delaware committed to vote for Maddox and Dyke. Plaintiff Clarence McKinney, a registered Delaware voter, desires to vote for and encourage others to vote for Maddox and Dyke. Collectively, they brought this action[1] on September 28, 1976 to secure a place on the Delaware ballot for Maddox,

Dyke and the presidential electors in the upcoming general election on November 2, 1976. Due to the severe time limitations imposed by the impending election, the parties agreed to treat the preliminary injunction hearing held on October 4, 1976 as a trial on the merits. At the close of trial, the Court denied the relief sought by plaintiffs and promised that it would promptly issue written findings of fact and conclusions of law. This memorandum opinion fulfills that promise in accordance with Rule 52(a), F.R.Civ.P.

The success of plaintiffs' efforts to obtain a ballot position in Delaware turns on the resolution of two issues. The first issue requires the Court to determine whether Maddox and Dyke are truly independent candidates or whether they are nominees of a party which failed to qualify for a place on the ballot under the Delaware election laws. The second issue for decision is whether the doctrine of laches bars equitable relief.

With respect to the first issue, this Court in *McCarthy v. Tribbitt*, 421 F.Supp. 1193 (D.Del.1976) and *McInerney v. Wrightson*, 421 F.Supp. 726 (D.Del.1976) held that Delaware's election laws, 15 Del.C. § 101 et seq., as amended by Senate Bill No. 555 (signed by the Governor on June 7, 1976), were unconstitutional to the extent that they did not provide a means of ballot access to a truly independent candidate, that is, a candidate who was clearly unaffiliated with a political party. It must be emphasized that the regulations[2] imposed by Delaware laws upon candidates of political parties seeking to obtain a ballot position were not invalidated, and, further, it is clear that Delaware's restrictions on ballot access by party nominees are consistent with *Lubin v. Panish*, 415 U.S. 709, 718, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); *Storer v. Brown*, 415

---

1. Jurisdiction exists by virtue of 28 U.S.C. §§ 1343(3) and (4).

2. Under Senate Bill No. 555 for a nominee of a party to secure a ballot position in Delaware, the party must meet one of the following conditions: (1) have registered voters by party name equal to at least 1% of the total number of

registered voters within the state, or (2) a statewide candidate of the party must have received in the preceding general election at least 2% of the total vote cast, or (3) obtain petitions before August 15 of a general election year signed by at least 1% of registered voters of Delaware certifying that the party exists.

U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) and *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974).

The record is clear that neither Maddox and Dyke nor the party they represent have complied with the requirements of Delaware law. This failure is conceded, but plaintiffs maintain that Maddox and Dyke are independent candidates. The Court is unable to agree with this characterization and concludes that Maddox and Dyke are candidates of a political organization which failed to comply with the valid requirements of Delaware law applicable to their party. To slip through the gap in the Delaware election law found by McCarthy and McInerney, the putative independent candidate must show that he is not the candidate in this state of any political party.

A cursory review of the activities of plaintiffs Maddox and Dyke and their Delaware supporters refutes any claim of true independence or lack of party affiliation. The plaintiffs, excluding Maddox and Dyke, are active members of the Independent Party of Delaware which held a state convention in the spring of 1976,[3] nominated candidates for statewide offices in Delaware,[4] and elected delegates to attend the national convention of the American Independent Party.[5] The American Independent Party is a national political organization consisting of closely allied state organizations; the Independent Party of Delaware is its Delaware affiliate.[6] Plaintiffs Maddox and Dyke were nominated at the national convention of the American Independent Party as that party's candidates for President and Vice-President.[7] Shortly thereafter, the Independent Party of Delaware informed the defendant Election Commissioner that its candidates for President and Vice-President were plaintiffs Maddox and Dyke.[8] In early September, 1976, the Independent Party of Delaware initiated litigation in the Superior Court of the State of Delaware in an effort to secure a place on the November ballot and to qualify as a political party.[9] After this effort failed,[10] plaintiffs Maddox and Dyke sought to qualify for the Delaware ballot as "individual" candidates. However, the letterhead of their application belied their attempt to be classified as "independent" for it read in part "American Independent Party."[11]

Thus, this Court finds that plaintiffs Maddox and Dyke are not truly independent candidates but are the nominees of a political organization which failed to comply with the reasonable and valid ballot access requirements of Delaware law. Accordingly, the defendant Election Commissioner did not act in violation of the Constitution when he rejected the plaintiff candidates' application for a place on the ballot.

However, even if it were assumed, contrary to the Court's finding, that plaintiffs Maddox and Dyke are truly indepen-

---

3. DX–1 (Affidavit of Clarence W. McKinney, par. 3).

4. Among the candidates were plaintiffs Arthur McKinney for United States Representative, Clarence W. McKinney for Governor, and Alice M. DeLude for Treasurer. (Docket Item 8).

5. Two of the three delegates were plaintiffs Arthur McKinney and Clarence W. McKinney. Also, plaintiffs DeLude, Jones and Arthur McKinney were designated as presidential electors for the Independent Party of Delaware. (Docket Item 8). It is no mere coincidence that the presidential electors selected by the party several months ago are plaintiffs in this court.

6. Docket Item 6, pars. 3 and 4.

7. Docket Item 6, par. 2.

8. Docket Item 8.

9. DX 1. The complaint read in part: "The Independent Party of Delaware is an association of registered voters within the definition of a 'political party' . . . ."

10. Although the Independent Party of Delaware failed to qualify as a party for ballot access purposes (see note 2, *supra* ), it does not follow that its candidates are independent. The constitutionally proper provisions of the Delaware election laws envision political parties that do not have enough support to qualify for a place on the ballot. The plaintiffs' organization either did not have the requisite public support or did not exert enough effort to provide evidence of the requisite public support.

11. Docket Item 8.

dent candidates, the extraordinary relief requested would be barred by laches. Laches, a reflection of the maxim "equity aids the vigilant," arises when there has been an unwarranted delay which would work a hardship or disadvantage to another.

■ The plaintiffs apparently made no effort to qualify their party for ballot status under the applicable Delaware laws. Plaintiffs filed this suit a mere five weeks before the election although they were aware of ballot access difficulties at least seven weeks before this suit was filed.[12] In the meantime, the last column on voting machines in the City of Wilmington has been occupied and the time available for election officials to complete their election preparations has been shrinking steadily. The Court concludes that requiring the defendants to place plaintiffs Maddox and Dyke on the Delaware ballot would risk substantial disruption of the electoral process. Discretionary relief from a court of equity cannot be expected if it could jeopardize one of the most cherished rights of a free people—the right to vote.

The testimony of the defendant State Election Commissioner and Directors of County Election Departments indicated that the election officials, already working seven day weeks, are operating on a very tight schedule as they ready their system for the impending election. Last minute voter registration, processing of many absentee ballot requests, supervising the printing of voting machine ballots, sample ballots, tally sheets, and instruction sheets, instruction classes for election judges and clerks,[13] final preparation of voter lists and signature cards, and distribution of voting machines and supplies remain to be accomplished before November 2, 1976.

Even though plaintiffs have expressed a willingness to accept less than complete relief, printing changes, recalibration of voting machines, and pasting labels on the remaining absentee ballots would be required in order to include plaintiffs Maddox and Dyke on the ballot. However, imposing these duties on election officials would drain scarce resources and create a major risk that the voting machines might not be delivered on time to the polling places. Any further delay in the processing of absentee ballots could be expected to disenfranchise voters. Thus, plaintiffs' application comes too late for this Court to grant equitable relief without incurring a sizeable risk of substantial harm to the public by disruption of the electoral process. *Williams v. Rhodes*, 393 U.S. 23, 34, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

Furthermore, addition of plaintiffs Maddox and Dyke to the ballot in the City of Wilmington presents special problems. All nine columns of the voting machines in Wilmington now have candidates, and tradition, voter experience and expectation, and 15 Del.C. § 4502 all militate against placing plaintiffs Maddox and Dyke in a column with other candidates. Two columns on voting machines in Wilmington each have one candidate for a local position. These candidates have been nominated by groups that primarily represent minority racial and ethnic groups. Testimony at trial suggested that plaintiffs are widely viewed as opposing the interests of minority groups. Therefore, placing plaintiffs Maddox and Dyke in a column with a minority candidate would likely generate voter confusion and would also interfere with a minority candidate's previously established right to a place on the ballot. Thus, no space is available for the plaintiff candidates on the Wilmington ballot.[14]

---

12. DX–1. Letter from State Election Commissioner to counsel for the Independent Party of Delaware.

13. Mailing of absentee ballots and classes for election judges and clerks have already begun.

14. Paper ballots for use within Wilmington have been suggested, although not urged, by plaintiffs. Ballots would have to be printed; voters would have to be educated on the use of paper ballots; ballot boxes and polling booths would have to be constructed. It is doubted that adequate time remains for the implementation of voting by paper ballots. Moreover, voting machines were introduced over twenty years ago to reduce the possibility of vote fraud accompanying the use of paper ballots. This Court is not prepared to set back the clock to those chaotic conditions.

Recognizing the lack of space on the Wilmington ballot, plaintiffs requested ballot access for the rest of the state not within the City of Wilmington. Thus, plaintiffs urge the Court to give the voters in Wilmington a choice for President and Vice-President different from the one all other Delaware voters have. Because it appears fundamentally unfair to create two classes of voters with unequal rights in these circumstances, serious constitutional difficulties accompany plaintiffs' requested relief. *Wright v. Cripps*, 292 F.Supp. 294, 299 (D.Del.1968) (three judge court). Accordingly, the burden on the voters of Wilmington convinces the Court that it would be inappropriate to accede to plaintiffs' request for limited ballot access.

Similar problems arise with respect to the absentee voters. Absentee ballots have been printed and some have been mailed already. Due to the vagaries of mail service,[15] it is not possible to prepare and forward revised ballots to all absentee voters. As with voters in Wilmington, this Court will not grant equitable relief under these circumstances where a class of voters would be offered electoral choices different from the choices offered other voters in a statewide contest.

In sum, because it is clear that granting relief to the plaintiffs would substantially disrupt the electoral process and that plaintiffs improvidently delayed in bringing this action, the Court also holds that laches bars the equitable relief sought by plaintiffs. *Williams v. Rhodes, supra.*

Judgment will be entered in accordance with this memorandum opinion.

---

15. Approximately two thousand absentee ballots are mailed overseas.