794 F.2d 1176
 55 USLW 2051
 Adlai E. STEVENSON, Julia K. Beckman, Donald M. Prince, and
Michael J. Donohue, Plaintiffs-Appellants,
v.
STATE BOARD OF ELECTIONS, Richard A. Cowen, Theresa M.
Petrone, Carolyn R. Eyre, J. Phil Gilbert, Joshua
Johnson, John J. Lanigan, David E.
Murray, and Langdon D. Neal,
Defendants-Appellees,
Mark Fairchild, Dominick J. Jeffrey, George M. Laurence, and
Elma J. Washington, Intervenors.
 No. 86-1818, 86-1836.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 12, 1986.
Decided June 24, 1986.
 
 Andrew L. Frey, Mayer, Brown & Platt, Chicago, Ill. for plaintiffs-appellants.
 Michael J. Hayes, Office of Ill. Atty. Gen., Chicago, Ill., Russell J. Stewart, Park Ridge, Ill., for defendants-appellees.
 Before BAUER, COFFEY and EASTERBROOK, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 Plaintiffs challenge the constitutionality of an Illinois statute that requires persons seeking to run as independent candidates for state and county offices to file with the state 323 days before the general election. Ill.Rev.Stat., ch. 46, par. 10-2. For the reasons stated by the district court, Stevenson v. State Board of Elections, 638 F.Supp. 547, (N.D.Ill. 1986), we hold that the statute is constitutionally permissible. We note, however, that the proper defendants to this suit are the individual commissioners of the State Board of Elections, and not the Board as an entity. Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). With that minor clarification, we adopt the reasoning and opinion of the district court as our own.
 
 
 2
 We note further that the factual setting of this suit epitomizes factionalism and intraparty squabbling. It is exactly this type of chaos that a state may constitutionally regulate in the interest of an orderly and informed electoral process. Anderson v. Celebrezze, 460 U.S. 780, 803-804, 103 S.Ct. 1564, 1577-1578, 75 L.Ed.2d 547 (1983).
 
 The decision of the district court is
 
 3
 AFFIRMED.
 
 
 4
 EASTERBROOK, Circuit Judge, concurring.
 
 
 5
 The majority rests content with the opinion of the district court. Yet the district judge's opinion, fine though it is, does not completely answer the arguments that have been presented by the appellants. For example, the district judge distinguished Anderson v. Celebrezze, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), which held unconstitutional a filing deadline later than that of Illinois, on the ground that Anderson was running for President of the United States while Stevenson is running for Governor of Illinois. But several other courts have concluded that a single inquiry should be used to assess procedures for becoming a candidate for either a state or a national office. E.g., Goldman-Frankie v. Austin, 727 F.2d 603, 607 (6th Cir.1984). The majority does not explain why we should create a conflict among the circuits on this question by adopting the district court's opinion. More, one of the plaintiffs wants to run for the United States House of Representatives, a federal office. It is therefore necessary for this court to examine the legal questions anew.
 
 
 6
 Adlai Stevenson was the Democratic Party's candidate for Governor but resigned from the ticket because he could not abide the politics of Mark Fairchild, who the voters chose as the party's candidate for lieutenant governor. Julia K. Beckman did not run in a primary election but is dismayed because the voters selected, as the Democratic Party's candidate for the House of Representatives from the 13th District, someone she finds repugnant. Both Stevenson and Beckman want to run as independent candidates and are thwarted by a statute setting a deadline in December 1985, three months before the primary (and 323 days before the general election).
 
 
 7
 Stevenson and Beckman say they are injured by the 323 day gap between the filing deadline and general election. This is much longer than the gap held unconstitutional in Anderson, and it is hard to see how, given Anderson, the long delay may be sustained as a general matter. The Supreme Court held that the deadline for running as an independent should be late enough to permit candidates to respond to developments within the party or the world at large during the election season. A deadline in December 1985 for an election in November 1986 compels a candidate to commit himself far in advance, and it also hinders access to the ballot by compelling the candidate to gather signatures at a time when none of the voters may be thinking of who should be running for office and on what platform.
 
 
 8
 But Stevenson and Beckman are not the right litigants to present this argument. Their disappointments come from the results of the primary election. Neither wanted to run as an independent but was frustrated by the inability to assemble signatures in December. The injury of each candidate would be the same if the filing deadline for independent candidacy were the date of the primary election. If the primary were on June 15, a filing deadline of June 16 would be as fatal as a deadline of December 16. Unless the constitution requires states to put the filing deadline for independent candidacies after the primary election, Stevenson and Beckman are not entitled to relief. And the argument logically implies a substantial gap between the primary election and the filing date, a gap long enough for a person whose juices are riled by the results of the primary to put a candidacy in motion. This means time to form an organization, spread the word to the voters, and gather signatures. We are talking a month or more.
 
 
 9
 So the only question the court need decide is whether a candidate is entitled to enough time after the primary election to get on the ballot as an independent. The answer is no, for several reasons. The most compelling is the holding of Storer v. Brown, 415 U.S. 724, 733-37, 94 S.Ct. 1274, 1280-82, 39 L.Ed.2d 714 (1974), that a state may establish rules that require political parties to settle their disputes and not carry over factional conflicts into the general election. A demand for an easy route to the ballot by those dissatisfied with the results of the primary is precisely a demand to carry over intraparty disputes. Stevenson and Beckman do not like the candidates of their party and seek ways to defeat them. This is not the sort of late-breaking development that the Supreme Court considered in Anderson; it is the factious disagreement that the Supreme Court considered in Storer. There is no constitutional right that those disappointed by the outcome of the primary of their own party have time to get on the ballot themselves. Storer sustained a "sore loser" statute that prevented those defeated in the primary from running in the general election; a "sore winner" statute would be as valid, and to the extent the filing date for running as an independent acts as a sore winner statute it is valid too. Beckman was neither a winner nor a loser, but her dispute with the winner is the sort of intra-party conflict that Storer held may be squelched by state laws of general application. The state sets a time (the primary) for the dispute to be resolved.
 
 
 10
 If Illinois squelched the extension of intra-party disputes by a statute that also kept genuine independents and small parties off the ballot, there would be a serious problem. Illinois does not do this, however. New parties may file petitions until three months before the general election--this year, until August 4. The system of rules in place in Illinois gives genuine independents, and new or small parties, an advantage over people such as Stevenson and Beckman who stay with their parties through the primary and then bolt. Storer holds that states may create this relative disadvantage.
 
 
 11
 It is only a relative disadvantage, because Stevenson and Beckman themselves may join the fray as candidates of new parties. A new party may offer candidates for all statewide offices by gathering 25,000 signatures, the same number necessary to run as an independent candidate for Governor. Stevenson and Beckman say that this route is not as attractive as independent candidacies, but this is not dispositive. The state is entitled to give people an incentive to settle disputes within their own parties by presenting alternatives that are not as attractive as independent candidacies. The difference in attractiveness is a tax on continued disputation. Storer holds, at a minimum, that the state may give candidates incentives to abide by the results of party primaries without carrying their disputes through the general election.
 
 
 12
 The relative disadvantage of running on a new party ticket in Illinois is small. Beckman, for example, could form the "Julia K. Beckman Party", with herself as its sole candidate, and run for the House of Representatives; there is little difference between this and running as "Julia K. Beckman, independent." New parties in Illinois, unlike those in several other states, need not have party machinery, nominating conventions, and the like, the first time they appear on the ballot. A "new party" may be formed and operated in just the same way as an independent candidacy. At the end of the election Beckman can fold up her "party" and go away; it need not continue for another election season. So although the Supreme Court in Storer held that California's method of establishing new parties is not equivalent to or a good substitute for an independent candidacy, see 415 U.S. at 745-46, 94 S.Ct. at 1286-87, things are otherwise in Illinois.
 
 
 13
 Stevenson's life will not be so simple. The State Board of Elections interprets Ill.Rev.Stat. ch. 46 Sec. 10-2 as requiring a new party to slate candidates for each position being contested at that election in the geographic area. In 1986 the state-wide offices are Governor, Lieutenant Governor, Attorney General, Secretary of State, Comptroller, U.S. Senator, and three positions on the Board of Trustees of the University of Illinois. The language of the statute does not compel this interpretation. It requires each new party to file "a complete list of candidates of such party for all offices to be filled" at the forthcoming election. This could mean that the list shall contain all of the candidates the party chooses to run or that the list shall cover all offices to be filled. The Supreme Court of Illinois has yet to choose between these two meanings. See Anderson v. Schneider, 67 Ill.2d 165, 8 Ill.Dec. 514, 515, 365 N.E.2d 900, 901 (1977). But the Board supports the latter reading, and we must assume that the state's executive officials understand the state's law.
 
 
 14
 The need to slate candidates for each office is unwelcome to Stevenson because he does not wish to reduce the chances of the Democratic Party's candidates for other offices. He wants to run on a ticket limited to Governor, Lieutenant Governor, and Secretary of State. Yet the constitution does not compel a state to offer each candidate the method of running that he most prefers--especially when the reason for preferring a method is the desire to conduct an intra-party disagreement while limiting collateral damage. The rights of the voters are at stake too; the voters' rights are the ones most strongly emphasized in Anderson. Illinois offers Stevenson a position on the ballot provided that he runs with some additional candidates, which would increase the number of options open to the voters. The first amendment does not force Illinois to employ a method (independent candidacies) that reduces the number of choices before the voters, compared with the route to the ballot Illinois has provided.
 
 
 15
 Now it is true that a candidate on a new party's ticket is not in full control. Storer observed that there are associational interests at stake, and Stevenson does not want to be forced to "associate" with other candidates. The requirement that Stevenson associate with others, however, is one that he embraced when running in the Democratic Party's primary. The winners of the primary run on a slate that includes candidates for national, state, and local office. It cannot seriously be argued that the victor in a party primary has a constitutional right to carve up the party's slate into little pieces, each with a separate position on the ballot, so that the candidate can "associate" only with the other victors he most likes. Again the state may require the candidate to take the bitter with the sweet. The requirement that new parties run a slate of candidates is no different from the requirement that established parties do so. In either event the candidate may find himself running with adherents to different factions of the party. All of this is not to say that from Stevenson's perspective being a candidate of a new party is equivalent to being an independent or a candidate of the Democratic Party (with an acceptable running mate). It is not; that is why Stevenson filed this suit. The difference in the attractiveness of these options is the price Illinois forces Stevenson to pay to remain in the running; it is the amount by which Illinois discourages the continuation of intra-party disputes through the general election. It is a toll Illinois may extract.
 
 
 16
 Much of Stevenson's argument is couched in terms of less restrictive alternatives. We are told that Illinois should not require filing in December but should choose the "less restrictive alternative" of allowing independents to file in August, 90 days before the general election. This is less restrictive, certainly, but also less effective, because it reduces the incentive to resolve disputes within the party. Illinois also could have chosen more restrictive and more effective remedies, such as the "disaffiliation statute" sustained in Storer, a statute requiring a candidate to resign from his party a year before running as an independent. Cf. Rosario v. Rockefeller, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973). Doubtless the state could have a statute requiring winners as well as losers to stand aside for the election season. It is not helpful to ponder what is "less restrictive" without thinking about the functions the rules serve and how these functions would be affected by "less restrictive alternatives". Every alternative is more restrictive than some other one. "A judge would be unimaginative indeed if he could not come up with something a little less 'drastic' or a little less 'restrictive' in almost any situation, and thereby enable himself to vote to strike legislation down." Illinois State Board of Elections v. Socialist Workers Party, 440 U.S. 173, 188-89, 99 S.Ct. 983, 992, 59 L.Ed.2d 230 (1979) (Blackmun, J., concurring).
 
 
 17
 The point of looking at alternative methods of regulation is to see whether the state can justify the incremental restrictions in light of their incremental benefits. See Anderson, 460 U.S. at 789, 103 S.Ct. at 1570. The incremental restriction here is not filing in December versus filing in August; it is running as a candidate of a new party versus running as an independent. The state compels people dissatisfied with the outcome of the primary to run on a new party ticket. The incremental benefit of this restriction is that it discourages dissatisfied candidates from running as splinter candidates. The gain from this incentive may not be great, but the disability imposed on the would-be candidate is not great either. The current regime in Illinois is a "less restrictive alternative" compared with disaffiliation or disqualification statutes. The state need not choose a rule so much less restrictive that it also is useless in achieving the state's purposes. As we said in Hall v. Simcox, 766 F.2d 1171, 1174 (7th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 528, 88 L.Ed.2d 459 (1985), "courts may sometimes talk the language of least drastic means but they only strike down ballot-access regulations that are unreasonable". Illinois's whole package of regulations is not unreasonable.
 
 
 18
 This case therefore is governed by Storer rather than Anderson. Stevenson and Beckman still can get on the ballot as candidates of new parties; in Anderson it was independent candidacy or nothing. Stevenson already was on the ballot; nothing in Anderson requires a state to accomodate each candidate's druthers about how he should appear on the ballot. Stevenson's objection to running on a new party's ticket is that he does not want to advance extra candidates who might hurt his political allies, but the first amendment does not treat as a strong interest a claim that there should be fewer candidates rather than more, when the state wants to put more on the ballot. The system of rules does not discriminate against small parties; it discriminates in their favor by allowing small parties to get started late in the political season. The grounds on which Anderson distinguished Storer (see 460 U.S. at 803-05, 103 S.Ct. at 1577-79) all cut in favor of Illinois's rules. It may be, as Stevenson insists, that the logic of Anderson buries rather than distinguishes Storer, but the Court did not pursue its logic to the end, and we must follow Storer until the Court tells us to stop.
 
 
 19
 Stevenson's argument based on the equal protection clause of the fourteenth amendment also fails. There is a sufficient reason for Illinois to prevent people who do not like the outcome of the major parties' primaries from running as independents. It is the reason the Court approved in Storer. Channeling these would-be candidates into new parties puts a price on continuing the political dispute. A system of incentives is a rational compromise between free candidacy of all who would be independents (which is constitutional) and a disaffiliation statute (which is more restrictive, more effective, and also constitutional). The rational basis for the difference distinguishes Socialist Workers Party and Gjersten v. Board of Election Commissioners, 791 F.2d 472 (7th Cir.1986). Stevenson and Beckman now find themselves in a pickle, but that is only because of how the primary elections turned out. The rationality of the statute comes from the sensible structure of the system of incentives. That things worked out badly for these plaintiffs is not dispositive.
 
 
 20
 This leaves only the "overbreadth" argument. This concedes for the purpose of argument that the state could make the deadline for independent candidacy the same date as the primary election, and that if the state did so neither Stevenson nor Beckman could be an independent candidate. Still, the plaintiffs say, they are entitled to attack the actual date in December 1985. If this date is unconstitutional, then they are entitled to an injunction against it. The only alternative to December 1985 is the filing deadlines independents used to have before the amendment to the election code in 1975 that moved the date to December. This deadline was 78 to 90 days before the general election. Under this argument, even though Illinois could choose a deadline (the date of the primary) that would keep Stevenson and Beckman from becoming independent candidates, they are entitled to prevail.
 
 
 21
 This line of argument collides with the principle that a litigant whose conduct is within the constitutional limits of a state's regulatory power may not object on a ground that its application to other people would be unconstitutional. See Ulster County Court v. Allen, 442 U.S. 140, 154-55, 99 S.Ct. 2213, 2223-24, 60 L.Ed.2d 777 (1979); United States v. Raines, 362 U.S. 17, 20-22, 80 S.Ct. 519, 522-23, 4 L.Ed.2d 524 (1960). That a true independent who tried to get on the ballot in January 1986 might have a good challenge to this statute is not a reason why Stevenson must prevail. The overbreadth doctrine, which allows people to raise objections to the application of statutes to others, is a special rule of standing that applies only to speech. Village of Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980); Henry P. Monaghan, Overbreadth, 1981 Sup.Ct.Rev. 1. The court devised the doctrine because it believed that speech needs extra champions. The Court has never used the special overbreadth rule in cases dealing with restrictions on candidates' access to the ballot.
 
 
 22
 Stevenson treats Anderson as an overbreadth case. The Court held that Ohio's filing deadline for independent candidacies is unconstitutional even though Ohio could have excluded Anderson from the ballot by enacting a disaffiliation statute. This, however, is not an overbreadth argument. One who attacks the application to him of a law that is unconstitutional as applied to him is not making an overbreadth claim, even though the state could pass some completely different law that would affect him adversely. A would-be candidate who submits petitions two months before the election is arguing overbreadth when he concedes that the state could set the filing deadline three months ahead but that the law is unconstitutional--and he is entitled to be placed on the ballot--because the state set the deadline eleven months ahead. Anderson did not adjudicate a claim of this sort; none of the other election cases does either. Stevenson and Beckman may challenge only the application of the filing deadline to them, and not the application of the deadline to a hypothetical independent who appeared in January 1986. The statutory system stands up to the kinds of challenges these plaintiffs are entitled to raise against it. Whether someone else has a better claim is a question the court wisely leaves for another day.