**LIBERTARIAN PARTY OF KENTUCKY, et al., Plaintiffs,**

v.

**Bremer EHRLER, Etc., et al., Defendants.**

Civ. A. No. 91–231.

United States District Court, E.D. Kentucky.

Sept. 30, 1991.

Gary W. Sinawski, New York City, Kent Masterson Brown, Brown & Brown, P.S.C., Lexington, Ky., for plaintiffs.

Thomas H. Hellman, Kentucky Asst. Atty. Gen., Frankfort, Ky., for defendants.

## MEMORANDUM OPINION

FORESTER, District Judge.

This matter is before the court on the plaintiffs' motion for summary judgment and on the defendants' motion for summary judgment. These cross-motions for summary judgment have been fully briefed and were orally argued on September 13, 1991. They are ripe for a decision. For the reasons expressed below, plaintiffs' motion for summary judgment will be granted, in part, and the defendants' motion for summary judgment will be denied.

### I. TYPE OF ACTION

This "ballot access" case, filed pursuant to 42 U.S.C. § 1983, challenges the constitutionality of certain requirements that the Commonwealth of Kentucky imposes on either a minority party candidate or an independent candidate who seeks an elective office in Kentucky.

Plaintiffs are the Libertarian Party of Kentucky, Ernest McAfee, its candidate for Governor of Kentucky, Paul Thiel, its candidate for Railroad Commissioner (third district), Edward Dickinson, III, its state party chairman, and David Gailey, a registered voter and member of the Libertarian Party of Kentucky, who desires to vote for plaintiffs Ernest McAfee and Paul Thiel in Kentucky's general election on November 5, 1991.

Plaintiffs brought this declaratory judgment action seeking (1) a judgment declar-

ing certain provisions of K.R.S. 118.315(2) and K.R.S. 118.365(6) unconstitutional, (2) an order enjoining the defendants from enforcing the challenged provisions of these two statutes, (3) an order directing the defendants to place the Libertarian Party's candidates Ernest McAfee and Paul Thiel on the ballot for the respective offices they each seek in the general election to be held on November 5, 1991, and (4) their costs and attorney's fees pursuant to 42 U.S.C. § 1988.

More specifically, plaintiffs assert that the filing deadline established by K.R.S. 118.365(6) for the nominating petitions of minority party candidates and independent candidates is impermissibly early, and that the following requirements imposed by K.R.S. 118.315(2) are constitutionally defective: (1) the "same party affiliation" requirement, (2) the 5,000 signature requirement, and (3) the Social Security number requirement.

## II. DISCUSSION

### A. *Standard for Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper if the evidence of record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Further, in a trilogy of decisions rendered in 1986, the United States Supreme Court formulated a more liberal summary judgment standard. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989).

This action challenges the constitutionality of certain provisions in Kentucky's legislation providing rules regulating the election process in Kentucky. The facts underlying this case are not in dispute. Thus, this declaratory judgment action presents a case appropriate for summary judgment.

### B. *The Standing Issue*

It is undisputed that plaintiffs Ernest McAfee and Paul Thiel have tendered no nominating petitions to the Secretary of State for filing. For this reason, the defendants contend that the plaintiffs have no standing to bring this action at this time because they have not presented a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The essence of defendants' standing argument is that because the plaintiffs have failed to submit any nominating petitions for filing that were rejected by the Secretary of State, the plaintiffs have not been injured and have no standing to challenge the legislation in question.

In response, the plaintiffs contend that they have alleged a personal injury, *viz.*, the denial of access to the ballot for McAfee and Thiel, in violation of the plaintiffs' rights under the First and Fourteenth Amendments. Plaintiffs assert that the legislation they challenge unconstitutionally denies their access to the ballot, that this legislation is fairly traceable to the defendants, and that their injury is likely to be redressed by the relief requested in this declaratory judgment action.

Further, plaintiffs submit that there is no authority for the proposition that partial compliance with constitutionally defective legislation is required to confer standing to challenge such legislation. *See Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)—Socialist Labor Party had standing to challenge Ohio's restrictions on minor party access to election ballot, including petition signature requirement, even though plaintiff had not filed any petition signatures; *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1973)—independent presidential and vice-presidential candidates had standing to challenge California's restrictions on independent candidate ballot access, even though they did not file any petition signatures; *Greaves v. Mills*, 497 F.Supp. 283 (E.D.Ky.1980)—independent presidential

candidate Percy L. Greaves had standing to challenge Kentucky's filing deadline, even though he only filed 1,086 of the required 5,000 petition signatures; *Goldman–Frankie v. Austin*, 727 F.2d 603 (6th Cir. 1984)—independent candidate for state board of education had standing to challenge Michigan's election statutes that provided no means of ballot access for independent candidates other than being a member of a political party; *Stevenson v. State Board of Elections*, 794 F.2d 1176 (7th Cir.1986)—independent presidential candidate had standing to challenge Illinois' early filing deadline even though he did not submit any petition signatures; and *Rainbow Coalition of Oklahoma v. Oklahoma State Election Board*, 844 F.2d 740 (10th Cir.1988)—minority parties who contested Oklahoma's petition requirements and filing deadline for third parties had standing, even though they had not attempted to comply with statutes.

Plaintiffs allege that the "same political party affiliation" requirement imposed on them by Kentucky's present legislation is impossible for them to fulfill; therefore, in light of this impossibility, they have standing to challenge this legislation. From a review of the foregoing case law regarding standing to contest constitutionally defective legislation, it is clear that plaintiffs have standing to bring this action.

### C. The Filing Deadline for Minority Parties and Independents

K.R.S. 118.015(1) generally defines a "political party" as an organization of electors "which cast at least twenty percent (20%) of the total vote cast at the last preceding election at which presidential electors were voted for."

Plaintiffs allege that the Libertarian Party of Kentucky has eighty-four (84) members in Kentucky, and that its membership did not cast at least 20% of the total votes cast in Kentucky in the most recent presidential election. Thus, by statutory definition, the Libertarian Party of Kentucky is not a "political party" in Kentucky. At the hearing on September 13, 1991, the parties orally stipulated to this fact.

Generally speaking, candidates of the political parties, as defined by K.R.S. 118.-015(1), are nominated for office at primary elections. See K.R.S. 118.105. Independent candidates and candidates of minority parties that do not meet the statutory definition of a "political party" are nominated through the filing of a petition, as prescribed in K.R.S. 118.315. K.R.S. 118.365 establishes the filing deadline for these nominating petitions, in pertinent part, as follows:

> (6) Except as otherwise provided in this section, petitions of nomination shall be filed as required with the Secretary of State or county clerk not less than one hundred nineteen (119) days before the day fixed by law for the holding of primary elections ...

In 1991, Kentucky's primary election was held on May 28; therefore, the filing deadline for the nominating petitions of independent candidates and minority party candidates who sought to be placed on the ballot in the general election in November was January 29.

### ARGUMENT

Plaintiffs assert that a filing deadline of 119 days before the primary election in a statewide race, as prescribed by K.R.S. 118.365(6), is impermissibly early and cannot pass muster under the United States Constitution and the prevailing case law. Plaintiffs point out that K.R.S. 118.365(7) establishes a filing deadline in presidential elections of sixty-eight (68) days before the general election. Plaintiffs submit that Kentucky has no compelling interest in establishing this disparity in filing deadlines between statewide and presidential elections.

The defendants argue that Kentucky has a compelling interest in maintaining the integrity of the election process—*See American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1973)—and that the state is not required to justify the particular deadline imposed by the statute. In support of its filing deadline in statewide races established by K.R.S. 118.365(6), which is 119 days before

the primary election and 280 days before the general election, the defendants point out that in *Stevenson v. State Board of Elections, supra,* a filing deadline of 323 days before the general election was held to be constitutional. However, *Stevenson* was not reviewed by the United States Supreme Court; further, *Stevenson* is distinguishable, as discussed below.

## APPLICABLE LAW

The seminal "ballot access" cases addressing petition filing deadlines are *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), and *Anderson v. Celebreeze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983).

In *Williams v. Rhodes, supra,* two minority political parties in Ohio, the Ohio American Independent Party and the Socialist Labor Party, challenged a statute requiring a new political party seeking a ballot position in presidential elections to file its petitions by February 7 in order to be placed on the ballot in the general election in November.

In reviewing and analyzing Ohio's statute, the *Williams* Court noted:

> ... In the present situation the state laws place burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms.

393 U.S. at 30, 89 S.Ct. at 10.

The *Williams* Court then reiterated the following long-standing rule:

> ... In determining whether the State has power to place such unequal burdens on minority groups where rights of this kind are at stake, the decisions of this Court have consistently held that "only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms." *NAACP*

*v. Button,* 371 U.S. 415, 438 [83 S.Ct. 328, 341, 9 L.Ed.2d 405] (1963). *Id.* 393 U.S. at 31, 89 S.Ct. at 11.

In *Williams,* Ohio asserted that it could validly promote a two-party system in order to encourage compromise and political stability. However, the Court determined that the Ohio system "does not merely favor a 'two-party system'; it favors two particular parties—the Republicans and the Democrats—and in effect tends to give them a complete monopoly." *Id.* at 32, 89 S.Ct. at 11. The Court went on to hold:

> ... But here the totality of the Ohio restrictive laws taken as a whole imposes a burden on voting and associational rights which we hold is an invidious discrimination, in violation of the Equal Protection Clause.

*Id.* at 34, 89 S.Ct. at 12.

Thus, the *Williams* Court struck down a filing deadline of February 7, holding that Ohio failed to show that it had a compelling interest that would justify this legislation.

In *Anderson v. Celebreeze, supra,* the United States Supreme Court reviewed an Ohio statute requiring an independent presidential candidate to file a statement of candidacy and nominating petition in March in order to appear on the general election ballot in November. On April 24, 1980, John Anderson announced that he was an independent candidate for President; his nominating petition, tendered for filing on May 16, 1980, met all of Ohio's other filing requirements except for the March filing deadline. Ohio refused to file the petition because it was late.

The *Anderson* Court struck down this statute, holding that Ohio's March filing deadline placed an unconstitutional burden on the voting and associational rights of the supporters of John Anderson.

In *Cripps v. Seneca County Board of Elections,* 629 F.Supp. 1335 (N.D.Ohio 1985), plaintiff challenged Ohio's statute requiring independent candidates running for office in cities with a population over 200,000 to file petitions not later than 75 days before the primary election in order to be placed on the ballot in the general election. Plaintiff sought to run for Finance

Director of Tiffin, Ohio. The primary election was May 7; the filing deadline was February 21. Upon becoming a United States citizen, plaintiff tendered his petition on May 7; his petition was rejected because it missed the February filing deadline.

Relying heavily on *Anderson v. Celebreeze*, the *Cripps* court granted summary judgment to the plaintiff, holding that this legislation imposed a substantial burden on plaintiff's fundamental rights and was not justified by any apparent compelling state interest. The court noted that the early filing deadline compelled independent candidates to declare and to initiate their candidacies at least seventy-five (75) days earlier than those of partisan candidates.

*Rainbow Coalition of Oklahoma v. Oklahoma State Election Board, supra,* reviewed Oklahoma's statute requiring petitions to be filed by May 31 in order for the candidate to be placed on the general election ballot in November. The trial court determined that the May 31 filing deadline was constitutionally sound.

The Eleventh Circuit affirmed on appeal, stating:

> In sum, although we agree with the district court's observation below that the deadline here is "troublesomely early", rec., vol. I, doc. 51, at 11, we conclude that under controlling Supreme Court authority, Oklahoma's May 31 filing deadline is not unconstitutional, even in conjunction with the relatively high signature requirement.

*New Alliance Party of Alabama v. Hand,* 933 F.2d 1568 (11th Cir.1991), concerns the 1990 general election in Alabama. Plaintiff challenged an Alabama statute requiring all candidates, including independent and minority party candidates, to file petitions by April 6 in order to be placed on the November ballot. Plaintiff submitted its petition with the required number of signatures on June 5. Alabama rejected the petition solely because the petition missed the April 6 filing deadline.

The trial court held that this statute violated the First and Fourteenth Amendments in that it placed a heavy burden on the plaintiff and did not serve any compel-

ling state interest. The early filing deadlines were declared unconstitutional and Alabama was enjoined from enforcing them. Affirming the trial court's decision on appeal, the Eleventh Circuit stated, "No one can seriously contend that a deadline for filing for a minor party and its candidate seven months prior to the election is required to advance legitimate interests." 933 F.2d at 1576.

## ANALYSIS

■ Under Kentucky's scheme for regulating elections, in order for an independent candidate or a minority party candidate to be placed on the general election ballot in November, K.R.S. 118.365(6) requires such a candidate to file a nominating petition 119 days before the primary election in May. In 1991, the primary election was held on May 28, and the deadline for filing petitions was January 29, which is also 280 days before the general election.

Plaintiffs have submitted unrefuted evidence indicating that Kentucky has the earliest filing deadline among the fifty states and the District of Columbia. On the other hand, the defendants assert that the early filing deadline in statewide races is necessary to the state's interest in ensuring the integrity of the election process in Kentucky. However, the defendants have offered no explanation for the different filing deadlines between statewide and presidential elections. In statewide elections, the filing deadline is 280 days before the general election; in presidential elections, the filing deadline is 68 days before the general election.

A review of prevailing case law indicates that (1) a February filing deadline is too early (*Williams v. Rhodes, supra*), (2) a March filing deadline is too early (*Anderson v. Celebreeze, supra*), (3) a filing deadline of 75 days before the primary election is too early (*Cripps v. Seneca County Board of Elections, supra*), (4) an April 6 filing deadline is too early (*New Alliance Party of Alabama v. Hand, supra*), and (5) a May 31 filing deadline, although "troublesomely early," is constitutional.

The holding in *Stevenson v. State Board of Elections, supra,* that an Illinois filing deadline 323 days before the general election is constitutional, initially seems to be an anomaly. However, a closer review of *Stevenson* indicates that the *Stevenson* rests on the particular facts presented and Illinois' overall statutory scheme for accommodating independents and new or small political parties.

*Stevenson* presents these facts: In December 1985, Adlai E. Stevenson, a Democrat, decided to run for governor of Illinois and filed a petition as the Democratic nominee. On April 14, 1986, Stevenson won the primary as the Democratic Party's candidate for governor. However, because Mr. Stevenson was dissatisfied with the Democratic candidate who won the primary election for lieutenant governor, he resigned his position as the Democratic gubernatorial candidate and unsuccessfully sought to continue the race as an independent candidate. The filing deadline for independent candidates, as well as Republican and Democratic candidates, was in December 1985. Stevenson challenged this deadline as being unconstitutional.

The trial court upheld the Illinois filing deadline as constitutional. 638 F.Supp. 547 (N.D.Ill.1986). The Seventh Circuit affirmed on appeal. The concurring opinion in *Stevenson* points out that Illinois statutory scheme embodying the early filing deadline is designed to discourage intra-party disputes, such as the case in point between Stevenson and his running mate. However, this early filing deadline did not apply to new political parties. The court noted:

> ... New parties may file petitions until three months before the general election—this year, until August 4. The system of rules in place in Illinois gives genuine independents, and new or small parties, an *advantage* over people such as Stevenson and Beckman who stay with their parties through the primary and then bolt. *Storer* holds that states may create this relative disadvantage.

*Stevenson,* 794 F.2d at 1179.

Thus, *Stevenson,* a case arising from an intra-party dispute, is distinguishable from the present action.

Having reviewed (1) the evidence of record establishing that Kentucky's filing deadline of January 29, which is 119 days before the primary election and 280 days before the general election, is the earliest in the country, and (2) the applicable case law on constitutionally sound filing deadlines, the court concludes that the filing deadline of 119 days before the primary election, established in K.R.S. 118.365(6) is impermissibly early. It is unconstitutional because it imposes a burden on independent candidates and minority party candidates that is not borne by the majority party candidates in Kentucky. Therefore, the filing deadline prescribed by K.R.S. 118.365(6) cannot stand.

### D. The Nominating Petition Requirements

#### 1. The "same political party affiliation" requirement

Plaintiffs also take issue with language added to K.R.S. 118.315(2) in 1990 requiring signature petitions to be signed by registered voters of the same political party affiliation as the candidate who seeks nomination. K.R.S. 118.315(2), as amended in 1990, now begins with the following two sentences:

> (2) The form of petition shall be prescribed by the State Board of Elections. It shall be signed by the candidate and by registered voters of the same political party affiliation from the district or jurisdiction from which the candidate seeks nomination....

### ARGUMENT

Plaintiffs submit that in view of the fact that as "political party" is defined in K.R.S. 118.015(1), the Libertarian Party of Kentucky is not a "political party" in Kentucky. Therefore, since the Libertarian Party of Kentucky is by statutory definition not a political party, it would be impossible for the Libertarian Party candidates to submit nominating petitions with signatures of "the same political party affiliation" as the candidates.

Further, plaintiffs point out that in view of the fact that the Libertarian Party of Kentucky is comprised of eighty-four (84) members, it is also impossible for plaintiff Ernest McAfee to submit a petition containing 5,000 signatures of Libertarian Party members in Kentucky (as required by K.R.S. 118.315(2)) and for plaintiff Paul Thiel to submit a petition containing 400 signatures of Libertarian Party members in Kentucky (as required by K.R.S. 118.-315(2)). Therefore, plaintiffs argue that the dual impossibility presented by the "same political party affiliation" requirement is unconstitutional because it denies their candidates access to the ballot in Kentucky's statewide election.

The defendants argue that "the same political party affiliation" requirement is valid and that the plaintiffs could meet the petition signature requirements by submitting petitions signed by registered voters who are neither Democrats nor Republicans. Defendants advise that the current records in the Secretary of State's office indicate that there are 58,212 registered voters who are not affiliated with either the Republican or Democratic parties. Therefore, defendants submit that the plaintiffs have a pool of 58,212 registered voters to draw from in meeting the signature requirements for their petitions.

Plaintiffs counter defendants' argument by pointing out that the defendants are reading language into the statute which is not present. Plaintiffs argue that the statute does not state that the petitions of independent candidates and minority party candidates can be signed by any of the registered voters who are not Democrats or Republicans.

## APPLICABLE LAW

The court is unaware of any other statute in any other state requiring nominating petitions to be signed by registered voters of the same political party affiliation as the candidate seeking nomination. Neither the plaintiffs nor the defendants have submitted any case authority on "the same political party affiliation" requirement.

## ANALYSIS

In light of the fact that "the same political party affiliation" requirement was added to K.R.S. 118.315(2) in 1990, the challenge to this language certainly appears to be a case of first impression in Kentucky and elsewhere.

Defendants suggest that this new statutory language should be construed to mean that the petitions of independent candidates and minority party candidates could be signed by any of Kentucky's registered voters who are not Democrats or Republicans. This proffered construction reads language into the statute that is simply not there. The statute plainly says that the petition "shall be signed by the candidate and by registered voters of the same political party affiliation" as the candidate. The statute says no more and no less than that.

It is clear that "the same political party affiliation" requirement presents a major stumbling block to independent candidates and minority party candidates who aspire to an elective office in statewide elections. In the present action, the stumbling block presented by "the same political party affiliation" requirement results in plaintiffs Ernest McAfee and Paul Thiel being denied access to the ballot in the statewide general election in November. It is impossible for plaintiffs McAfee and Thiel to comply with this statutory requirement because their political association is comprised of 84 members and is by statutory definition not a "political party" in Kentucky. The "same political party affiliation" requirement imposes an undue burden on independent candidates and minority party candidates that is not borne by the majority party candidates in Kentucky.

As the United States Supreme Court in *Anderson v. Celebreeze, supra,* stated:

... As our cases have held, it is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status. "Our ballot access cases ... focus on the degree to which the challenged restrictions operate as a

mechanism to exclude certain classes of candidate from the electoral process. The inquiry is whether the challenged restriction unfairly or unnecessarily burdens the 'availability of political opportunity.'" *Clements v. Fashing*, 457 U.S. 957, 964 [102 S.Ct. 2836, 2844, 73 L.Ed.2d 508] (1982) (plurality opinion), quoting *Lubin v. Panish*, 415 U.S. [709], at 716 [94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974)].

A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties. *Clements v. Fashing, supra*, [457 U.S.] at 964–965 [102 S.Ct. at 2844–45] (plurality opinion).

*Anderson*, 460 U.S. at 792–93, 103 S.Ct. at 1572.

Under the teachings of *Anderson v. Celebreeze, supra*, the court concludes that "the same political party affiliation" requirement of K.R.S. 118.315(2) imposes an unconstitutional burden on independent candidates and minority party candidates that cannot stand.

### 2. *The 5,000 signature requirement*

K.R.S. 118.315(2) also requires that a potential candidate running for statewide office submit a nominating petition signed by 5,000 registered voters in Kentucky.

Plaintiffs contend that even if the pool of available signers from which they could draw potential signers consists of 58,212 registered voters who are neither Democrats nor Republicans, the 5,000–signature requirement for candidates for state office, drawn from a pool of 58,212, is unconstitutional because it comprises a signature requirement in excess of eight and one-half percent (8½%) of the voter pool of 58,212. Plaintiffs submit that this 8½% signature requirement exceeds the highest signature requirement of five percent (5%) ever upheld by the United States Supreme Court.

## APPLICABLE LAW

Kentucky's requirement that nominating petitions for statewide office contain the signatures of 5,000 registered voters in Kentucky has twice been challenged and upheld. *See Anderson v. Mills*, 664 F.2d 600 (6th Cir.1981) (Kentucky's 5,000 signature requirement for statewide and presidential elections is constitutional) and *Libertarian Party v. Davis*, 601 F.Supp. 522 (E.D.Ky.1985).

A review of the prevailing case law challenging the signature percentages required in nominating petitions indicates that in *Williams v. Rhodes, supra*, a requirement that minority candidates' petitions contain the signatures of fifteen percent (15%) of the votes cast in the most recent gubernatorial election was unconstitutional; in *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), a five percent (5%) signature requirement of the total registered voters who voted in the most recent election was upheld; in *Storer v. Brown, supra*, a requirement that independent candidate's petitions be signed by not less than 5% and not more than 6% of the total votes cast in the last general election was upheld; in *American Party of Texas v. White, supra*, a requirement that third-party petitions contain signatures equal to one percent (1%) of the total votes cast in the last gubernatorial election was upheld; and in *Rainbow Coalition of Oklahoma v. Oklahoma State Election Board*, 844 F.2d 740 (10th Cir.1988), a requirement that a political body seeking recognized status file petitions containing signatures of at least five percent (5%) of the total votes cast in the last general election was upheld.

The generalization to be distilled from the foregoing cases is that a state can require nominating petitions of independent candidates and minority party candidates to contain signatures equal to five percent (5%) of the total votes cast in the most recent general election.

## ANALYSIS

■ In light of the fact that the court has declared the requirement that nominat-

ing petitions be signed by "voters of the same political party affiliation" to be unconstitutional, the court need not address plaintiffs' argument that requiring them to obtain 5,000 signatures from the pool of 58,212 registered voters who were neither Republicans nor Democrats is unconstitutional because this percentage requirement exceeds the five percent (5%) requirement approved by the United States Supreme Court. Plaintiff's argument on this point is now moot.

Prevailing case law also teaches that Kentucky's requirement that in statewide and presidential elections, nominating petitions contain 5,000 signatures from Kentucky's registered voters is constitutional. With the "same political party affiliation" requirement severed from K.R.S. 118.-315(2), any registered voter in Kentucky may sign the nominating petition of an independent candidate and a minority party candidate. Considering that the 5,000 signatures may be obtained from the entire pool of registered voters in Kentucky, as previously held, this requirement imposes no undue burden on independent candidates and minority party candidates.

3. *The Social Security number requirement*

Plaintiffs also take issue with the following language added to K.R.S. 118.315(2) in 1990:

... Failure of a voter to include his Social Security number and address shall result in his signature not being counted.

Plaintiffs submit that the foregoing language requiring the voter to include his social security number on the petition before his signature will be counted, violates Section VII of the Federal Privacy Act of 1974.

Prior to the 1990 amendment, K.R.S. 118.315(2) required the petitioner to include on the signature petition his residence, Social Security number, and post-office address. Plaintiffs point out that in 1983, the Attorney General of Kentucky rendered an opinion (OAG 83-437) stating that the statutory requirement that a person signing a candidate's petition also include the sig-

ner's Social Security number is *directory only* and that the failure or refusal of the signer to give his Social Security number will not invalidate his signature.

In their answer, the defendants concede that this new language added to K.R.S. 118.315(2), requiring a petitioner to include his Social Security number on a signature petition, violates Section VII of the Federal Privacy Act of 1974, Public Law 93-579, Title 5 U.S.C. § 552a.

Accordingly, the court concludes that the language requiring a voter to include his Social Security number on a signature petition must be severed from K.R.S. 118.-315(2), as amended in 1990.

### III. APPROPRIATE RELIEF

In this declaratory judgment action, plaintiffs have requested (1) a judgment declaring certain provisions of K.R.S. 118.-315(2) and K.R.S. 118.365(6) unconstitutional, (2) an injunction prohibiting the defendants from enforcing the challenged provisions of these two statutes, and (3) an order directing the defendants to place the Libertarian Party's candidates, Ernest McAfee and Paul Thiel, on the ballot for the respective offices they each seek in the general election to be held on November 5, 1991.

As pointed out in *Jenness v. Fortson, supra,* the state is entitled to require "some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot." 403 U.S. at 442, 91 S.Ct. at 1976. This basic principle was reaffirmed in *Munro v. Socialist Workers Party,* 479 U.S. 189, at 194, 107 S.Ct. 533, at 536-37, 93 L.Ed.2d 499 (1986). *See also Anderson v. Celebreeze, supra.* Thus, if the plaintiffs have shown a "significant modicum of support," they would be entitled to have their candidates placed on the ballot in the general election in November.

A review of the filing deadline cases where the candidate has obtained the requisite number of signature petitions, has tendered these petitions to the appropriate state official, and otherwise has met all the

statutory requirements except for meeting the statutory filing deadline, indicates that the candidate should ordinarily be placed on the ballot. *See Anderson v. Celebreeze, supra; Cripps v. Seneca County Board of Elections, supra; Rainbow Coalition of Oklahoma v. Oklahoma State Election Board, supra;* and *New Alliance Party of Alabama v. Hand, supra.*

▇ The record in the present action indicates, that unlike the plaintiffs in the foregoing cases, other than the filing of this action, the plaintiffs herein have taken no affirmative steps to be placed on the November election ballot. There is no evidence that plaintiffs have prepared petitions and attempted to obtain the required number of signatures from any of Kentucky's registered voters, regardless of political party affiliation, to show some support for their candidates. This point is seen by the affidavit of George Russell, the Executive Director of the State Board of Elections, who states:

> ... There have been no nominating petitions submitted to the Office of the Secretary of State on behalf of either Ernest McAfee or Paul Thiel for placement of their names on the November 5, 1991, general election ballot. I recall having a phone conversation with Mr. Sinawski approximately one week before the present lawsuit was filed, but at no time during that conversation did he demand or request that McAfee or Thiel be placed on the November 5, 1991, ballot. Furthermore, I am not aware of anyone else making such a demand or request to the Office of the Secretary of State.

*See* Exhibit 1 attached to defendants' memorandum filed in support of their motion for summary judgment. (Docket Entry # 10).

In view of the fact that other than the filing of this action, plaintiffs have made no effort to be placed on the November election ballot, the court concludes that they have not shown *any* support for their candidates. Therefore, absent a showing of a "significant modicum of support," plaintiffs are not entitled to be placed on the November election ballot.

▇ The court also notes that although the petition filing deadline was January 29, plaintiffs did not initiate this action until May 24. At no time did plaintiffs move for injunctive relief or request that this action be expedited on the court's docket. Subsequent to the filing of the complaint on May 24, plaintiffs took no affirmative action in this matter until August 7, when they moved for summary judgment. Thus, the court is of the opinion that at this late date, plaintiffs' request that their candidates McAfee and Thiel be placed on the November election ballot is barred by laches. In reaching this conclusion, the court is guided by *Libertarian Party v. Davis, supra,* which stated:

> However, even if it were assumed, contrary to the Court's finding, that Plaintiffs' rights were violated, the extraordinary relief requested would be barred by laches. Laches, a reflection of the maxim "equity aids the vigilant," arises when there has been an unwarranted delay which would work a hardship or disadvantage to another. Thus, those courts which have considered comparable claims have in effect balanced the interests of the parties and required that any claims against the state procedure be pressed expeditiously. As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made, and the candidate's and the party's claims to be a serious candidate and a serious party who have received a serious injury become less credible by having slept on their rights. *Williams v. Rhodes,* 393 U.S. 23, 34–35, 89 S.Ct. 5, 12–13, 21 L.Ed.2d 24 (1968); *Kay v. Austin,* 621 F.2d 809, 813 (6th Cir.1980); *Maddox v. Wrightson,* supra [421 F.Supp. 1249] at 1251–1253 [D.Del. 1976].

601 F.Supp. at 525.

## IV.  CONCLUSION

In light of the foregoing review of the facts of this case and the law applicable thereto, the court summarizes its opinion as follows:

A. The filing deadline of 119 days prior to the primary election for the nominating petitions of independent candidates and minority party candidates, as set forth in K.R.S. 118.365(6), is impermissibly early and is unconstitutional;

B. The 1990 amendment to K.R.S. 118.-315(2), requiring nominating petitions to be signed by registered voters of the same political party affiliation as the petitioning candidate is unconstitutional and must be severed from this statute;

C. The requirement in K.R.S. 118.315(2) that a nominating petition of an independent candidate or a minority party candidate for statewide office contain the signatures of 5,000 registered voters in Kentucky is constitutional;

D. The 1990 amendment to K.R.S. 118.-315(2) that a voter who signs a nominating petition must include his Social Security number in order for his signature to be counted is in violation of Section VII of the Federal Privacy Act of 1974, Public Law 93–579, Title 5 U.S.C. § 552a, and must be severed from this statute;

E. The defendants should henceforth be enjoined from enforcing (1) the filing deadline for nominating petitions established in K.R.S. 118.365(6); (2) the "same political party affiliation" requirement in K.R.S. 118.315(2), as amended in 1990; and (3) the requirement in K.R.S. 118.315(2), as amended in 1990, that a voter must include his Social Security number on a nominating petition.

F. The plaintiffs are not entitled to have their candidates, Ernest McAfee and Paul Thiel, placed on the November general election ballot.